### A92A1750. THURMAN v. THE STATE.
(427 SE2d 69)

BIRDSONG, Presiding Judge.

Terry Thurman was convicted of five counts of armed robbery and eight counts of aggravated assault. After merging five of the aggravated assault counts with the counts of armed robbery, the trial court sentenced him to serve seventeen years on each count concurrently. His motion for new trial was denied and he appeals.

The State produced evidence showing that on Christmas Eve of 1990, four black males armed with a shotgun, a sawed-off shotgun, an Uzi and a .38 pistol kicked down the door of a residence in Bowdon, Georgia. Lester Lee Walker testified that he held the residents, including an eight-year-old boy, at gunpoint in the front room, while the other men stormed into a back room where a card game was in progress. Firing their weapons, they forced the five players to strip and grabbed their money and jewelry. Walker took a wallet from the man he was guarding, but threw it back when he found it was empty. The victims were instructed to lie face down on the floor while the robbers escaped in a car driven by a fifth man, who was identified at trial as appellant. Walker testified that appellant, who knew the household residents and was aware that gambling took place in the back room, had planned the robbery, described the layout of the house and waited in and drove the get-away car. The victims immediately notified the police.

Deputy Clay Culver of the Carroll County Sheriff's Department testified that he heard a radio call while he was on patrol on Highway 5 at about 10:15 p.m., announcing that there had been an armed robbery involving about four black male suspects, and that one or more of them were wearing green coveralls. About ten minutes after the robbery was reported and eight to ten miles from where it occurred, Culver encountered a 1976 Oldsmobile Cutlass on the side of the road with its headlights on. He passed it but turned around and pulled up behind it. The car was driven off, but stopped again when Culver turned on his blue lights. Culver approached the car, which contained five black males, shined his flashlight inside, and noted that two of the men were wearing green coveralls. When he asked the driver to

step out and talk to him, appellant rolled down the front window and crawled out of it. Culver patted him down, put him in the back of the patrol car and radioed for confirmation of the green coveralls from an officer at the scene. At that point another man got out of the car and walked toward Culver; he was also patted down, placed in the patrol car and backup assistance was then radioed. When he looked up again, he saw that the remaining three men had exited the car. Culver ordered them to stay where they were and put their hands on top of their heads, but they immediately ran off toward a wooded area. Culver began chasing them until he noticed that one of them was holding a handgun, so he took cover to watch what direction they were going in. Another deputy arrived, but the three suspects eluded capture. The rest of the firearms carried by the robbers and one stolen during the robbery were found in the suspects' car. When the get-away car was impounded, it was discovered that the door at the driver's seat was wired shut because it would not close all the way.

Appellant testified that he was dropped off at Highway 5 by his mother about 9:30 or 10:00 p.m. on Christmas Eve, and was trying to hitchhike to a friend's house when a car with four passengers, none of whom he knew, pulled over to the side of the road to ask him directions. The driver and one passenger got out when a Carroll County deputy sheriff drove by. As they watched, the patrol car turned around and came back. One of the other passengers pointed a gun at appellant and ordered him to get in the front seat, where he was shoved over to the driver's side. When the deputy approached and asked him to get out, he could not get the door open and was forced to crawl out the window. He was patted down and taken to the patrol car where he warned the deputy that the other men were armed. He claimed that after he was incarcerated Deputy Culver escorted him to see a dentist and thanked him for saving his life. Appellant's cell mate, who was also present, corroborated his story, but Deputy Culver denied that the conversation took place, or that appellant had warned him that the other men were armed. *Held*:

1. Appellant contends that the evidence was insufficient to sustain the conviction under the constitutional standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560), because the circumstantial evidence of his mere presence in the company of the suspected robbers was not competent to corroborate the testimony of the alleged accomplice. We do not agree. Deputy Culver's testimony as to appellant's actions and demeanor were in direct conflict with appellant's testimony, and bolstered that of the accomplice, Lester Lee Walker. It was uncontradicted that appellant had visited the occupants of the house where the armed robbery occurred and knew that gambling took place there.

"The rule is well established that, to sustain a 'conviction in a

felony case upon the testimony of an accomplice, there must be corroborating facts or circumstances, which, in themselves and independently of the testimony of the accomplice, directly connect the defendant with the crime, or lead to the inference that he is guilty, and (are) more than sufficient to merely cast on the defendant a grave suspicion of guilt.' (Cits.) However, 'the sufficiency of the corroboration evidence is peculiarly a matter for the jury to determine. If the verdict is founded on slight evidence of corroboration connecting a defendant with the crime, the verdict is legally sufficient. (Cits.)' . . . '(T)he necessary corroboration may consist entirely of circumstantial evidence, and evidence of the defendant's conduct before and after the crime was committed may give rise to an inference that he participated in the crime. (Cits.)' [Cit.]" *Bradford v. State*, 261 Ga. 833, 834 (1) (412 SE2d 534). Accord *Williams v. State*, 198 Ga. App. 725 (1) (402 SE2d 796); *Peabody v. State*, 190 Ga. App. 304 (2) (378 SE2d 712).

2. Appellant asserts that the trial court erred in denying his motion for new trial based upon the ineffective assistance of his appointed counsel. A hearing was held on the motion at which appellant testified about his attorney's alleged deficiencies, and the trial court found that there was no ineffective assistance of appointed counsel. Our review of the trial transcript confirms this evaluation. Although appellant complains that he felt his appointed counsel was disinterested in his case, did not adequately consult with him or prepare him for trial, and failed to procure a key witness, this did not establish that but for counsel's unprofessional errors, the jury verdict would have been different. Appellant's trial counsel, a public defender with over five years experience, testified that he met with appellant on six occasions and first recommended that he plea bargain, but acquiesced to his wishes to go to trial. This was made more difficult because appellant gave his attorney three different explanations for his presence at the scene when he was arrested. The attorney did not attempt to contact appellant's "key witness" because this man never saw him on the night in question.

Applying the two-prong test to determine ineffectiveness of counsel as set forth in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674), "it must be established that the representation [fell] below an objective standard of reasonableness and the defendant must show prejudice in that, but for counsel's unprofessional errors, the result of the proceeding would have been different. [Cits.]" *McAlister v. State*, 204 Ga. App. 259, 261 (2) (419 SE2d 64). " 'Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that . . . under the circumstances, the challenged action 'might be considered sound trial strategy.' . . . [Cit.]" *Bowley v. State*, 261 Ga. 278, 280 (4) (404 SE2d 97). We find

no grounds for reversal under the appropriate standard.

3. The State introduced in evidence a jacket worn by appellant when he was arrested that had the name "Rosser" written on its label. Appellant complains that the trial court improperly allowed hearsay testimony of Lester Lee Walker that he knew one of the accomplices whom he had previously named as "Cobb" was also known by the name "Rosser" because his (Walker's) girl friend had told him this. The trial transcript reveals, however, that this information was not elicited solely for the purpose of proving the truth of the matter, but rather to explain Walker's differing identifications of this individual by showing that at the time he named his accomplices he used the names he knew them by then. This was recognized by the trial court, which gave curative instructions to the jury that the evidence was admitted "not for the truth of what his girl friend told him but [to account for] any inconsistencies in naming certain individuals by certain names as he knew them at the time." "[T]estimony is considered hearsay only if the witness is testifying to another party's statement in order to prove or demonstrate the truth of that statement. [Cits.] Otherwise it is a verbal act and thus original evidence rather than hearsay. [Cit.]" *Hurston v. State*, 194 Ga. App. 226 (390 SE2d 119). Accord *Strickland v. State*, 257 Ga. 230 (3) (357 SE2d 85); *Williams v. State*, 202 Ga. App. 485 (1) (414 SE2d 712).

*Judgment affirmed. Andrews, J., concurs. Beasley, J., concurs in judgment only as to Division 2.*

DECIDED JANUARY 14, 1993.

*Tisinger, Tisinger, Vance & Greer, J. Branson Parker*, for appellant.

*Peter J. Skandalakis, District Attorney, Anne C. Allen, Assistant District Attorney*, for appellee.