A02A2125. THE STATE v. TOLLEFSON.

(577 SE2d 21)

RUFFIN, Presiding Judge.

A grand jury indicted Leif Alf Tollefson for interfering with government property, falsely reporting a crime, and two counts each of obstructing an officer and making false statements and writings. Tollefson subsequently moved to suppress the evidence gathered by police. Following a hearing, the trial court granted Tollefson's motion, and the State appeals. For reasons that follow, we affirm.

1. The evidence presented at the suppression hearing was uncontroverted and raised no questions regarding witness credibility. Accordingly, we "conduct a de novo review of the trial court's application of law to the undisputed facts."[1] Those facts show that, at approximately 3:45 a.m. on April 8, 2000, Corporal Stacy Shreaves

---

[1] *Hughes v. State*, 269 Ga. 258, 259 (1) (497 SE2d 790) (1998).

was patrolling a nightclub parking lot, checking the security of the patrons' cars, when another officer informed him that someone had " 'passed out behind the wheel of a car.' " Shreaves and Patrolman Jason Burton approached the car and saw Tollefson slumped in his seat, either asleep or unconscious. At that point, the car was not moving, and its engine was off.

The officers grew concerned about Tollefson's health, and Burton knocked on the car window. When Tollefson did not respond, Burton opened the car door, which was unlocked, and shook Tollefson. Again, Tollefson did not respond. Burton then placed an ammonia capsule under Tollefson's nose. Tollefson woke up a few seconds later and began cursing at the officers, but made no threatening gestures. According to Shreaves:

> Burton asked [Tollefson] to step from the vehicle because of his agitated state so we could pat him down and make sure he didn't have any weapons on him or anything that would hurt us due to his agitated state. When he got out of the vehicle he was still cussing and being belligerent to us. All we were trying to do was to calm him down so we could get his ID checked and see if we could have somebody come get him or call a taxi for him, or if the case called for it, to take him into protective custody to take him out to the jail.

Shreaves and Burton placed Tollefson's arms on the car roof, and Burton began to frisk him. Tollefson then spun around and tried to punch the officers, who grabbed him, placed him on the ground, and handcuffed him. As the officers escorted Tollefson to Burton's patrol car, Tollefson kicked the car, prompting Shreaves and Burton to push him against the vehicle. At that point, Tollefson started beating his head on the car.

Eventually, Tollefson was transported to the jail and charged with obstruction and interference with government property. Apparently, he later lodged a police brutality complaint with the police department's internal affairs division, alleging that Shreaves and Burton injured him. Based on those allegations, the State also charged him with making false statements and falsely reporting a crime.

Following the suppression hearing, the trial court concluded that Shreaves and Burton illegally seized Tollefson when they ordered him out of his car and placed his hands on the top of the vehicle. The court thus suppressed all evidence obtained by the police, including the statements supporting the false statements and false reporting charges. We find no error.

(a) The State first argues that, even before Tollefson got out of his car, Shreaves and Burton *could have* arrested him for public drunkenness.[2] In the State's view, therefore, "they were also legally entitled to conduct a search of his person pursuant to the arrest." Prior to the frisk, however, the officers did not arrest him, and, according to Shreaves, they did not intend to arrest him for any crime at that point. The State has cited no authority to support its novel claim that the police can search a person incident to an arrest that not only never occurred, but that officers never considered. We find no merit in this argument.

(b) The State also claims that the officers were justified in briefly detaining and searching Tollefson. As noted by the trial court, Georgia recognizes at least three levels of police-citizen encounters: "verbal communications which involve no coercion or detention; brief 'stops' or 'seizures' which must be accompanied by a reasonable suspicion; and 'arrests' which can only be supported by probable cause."[3] Although a first-tier verbal encounter raises no constitutional concerns, all seizures, even those requiring only a brief detention, implicate the Fourth Amendment.[4] Before conducting a second-tier stop or "seizure," therefore, an officer must have "a particularized and objective basis for suspecting that a citizen is involved in criminal activity."[5] A seizure occurs "when, in view of all the circumstances surrounding the incident, a reasonable person believes that he is not free to leave."[6]

A police officer may approach a stopped vehicle and inquire about an occupant's well-being without intruding on the Fourth Amendment.[7] The officers' initial contact with Tollefson thus fell within the first level of police-citizen encounters and required no suspicion of criminal activity.[8] Eventually, however, the situation escalated to a second-tier encounter involving a seizure. Certainly, by the time Shreaves and Burton placed Tollefson's hands on the car roof and began to frisk him, a seizure had occurred.[9]

We agree with the trial court that the officers lacked any reasonable suspicion to seize Tollefson. On appeal, the State argues that the detention was authorized because Tollefson "had met the elements of the crime of public drunkenness." The pertinent question, however, is

---

[2] See OCGA § 16-11-41 (a).

[3] *State v. Folk*, 238 Ga. App. 206, 207 (521 SE2d 194) (1999).

[4] See id.

[5] Id.

[6] Id.

[7] See id.; *O'Donnell v. State*, 200 Ga. App. 829, 831 (1) (409 SE2d 579) (1991).

[8] See id.; *Folk*, supra.

[9] See *State v. Taylor*, 226 Ga. App. 690, 691 (487 SE2d 454) (1997) (first-tier verbal encounter escalated to a seizure when officer grabbed and frisked defendant).

whether "the *detaining officers* had a reasonable suspicion that [Tollefson was], or [was] about to be, engaged in criminal activity."[10]

Another officer might have concluded from the facts that Tollefson had committed public drunkenness or some other crime. But Shreaves and Burton apparently had no such suspicion, and, as noted by the trial court, Shreaves never testified that Tollefson exhibited any signs of intoxication. According to Shreaves, the officers asked Tollefson to get out of his car and frisked him because he was cursing and "agitated." Yet, Shreaves never connected that "agitated state" with any suspected criminal activity. He testified that they simply wanted to calm Tollefson down so that they could find him a ride home.

Under these circumstances, we cannot find error in the trial court's conclusion that Shreaves and Burton lacked reasonable suspicion to detain Tollefson.[11] And without such reasonable suspicion, they had no basis for frisking him.[12]

2. In granting Tollefson's motion, the trial court suppressed *all* evidence gathered by the police, including the statements made by Tollefson after his arrest. On appeal, the State argues only that the officers were legally entitled to detain and search Tollefson, arguments that we rejected in Division 1. It does not contend that the trial court erred in excluding all — or any particular — evidence as fruit of the poisonous tree. Accordingly, we will not consider that issue.

*Judgment affirmed. Barnes and Adams, JJ., concur.*

DECIDED JANUARY 28, 2003.

---

[10] (Emphasis supplied.) *Kazeem v. State*, 241 Ga. App. 175, 178 (1) (525 SE2d 437) (1999).

[11] See id.; see also *Edgell v. State*, 253 Ga. App. 775, 776-777 (560 SE2d 532) (2002) (officer who does not suspect individual of any criminal activity has no authority to detain the individual); *Bonner v. State*, 233 Ga. App. 215, 216 (504 SE2d 27) (1998) (officer cannot conduct a traffic stop simply to identify someone who is " 'acting suspicious' "); *State v. Newton*, 227 Ga. App. 394, 397 (5) (489 SE2d 147) (1997) (physical precedent only) (existence of outstanding arrest warrant did not cure taint on contraband seized following search of wallet conducted without articulable suspicion because officers did not know about or act in reliance on warrant).

[12] See *Taylor*, supra (when articulable suspicion of criminal activity is present, " 'a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual' may be conducted").

*Kenneth B. Hodges III*, District Attorney, *Kathryn O. Fallin*, Assistant District Attorney, for appellant.

*James N. Finkelstein*, for appellee.