## A06A2497. STADNISKY v. THE STATE.
(645 SE2d 545)

MIKELL, Judge.

Walter Stadnisky was accused of driving under the influence of alcohol (DUI) to the extent it was less safe for him to drive, driving with an unlawful alcohol concentration, OCGA § 40-6-391 (a) (5), and failure to maintain lane. After a stipulated bench trial, Stadnisky was

found guilty of the per se DUI charge and of failure to maintain lane; the less safe DUI charge was nolle prossed. Stadnisky appeals. Finding that none of his enumerations of error has merit, we affirm.

1. Stadnisky challenges the sufficiency of the evidence to support his DUI conviction, asserting that the state failed to prove an essential element of OCGA § 40-6-391 (a) (5). The statute directs, in pertinent part, that a "person shall not drive or be in actual physical control of any moving vehicle while . . . [t]he person's alcohol concentration is 0.08 grams or more at any time within three hours after such driving . . . from alcohol consumed before such driving . . . ended." Stadnisky argues that the state presented no evidence that he had not consumed alcohol between the end of his driving and his first contact with the arresting officer. We disagree.

> On appeal from a bench trial, we view the evidence with all inferences in favor of the factfinder's conclusion, giving due regard to the trial court's opportunity to judge witness credibility. The issue before us is whether the evidence was sufficient at trial to support a conviction under the standards of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).[1]

Properly viewed, the evidence, both direct and circumstantial, shows that shortly after midnight on July 1, 2004, Colleen Hepner was driving in the right lane on Peachtree Industrial Boulevard in Gwinnett County when Stadnisky swerved in front of her vehicle and hit its left front fender. Hepner testified that the collision pushed her car into the curb. She and Stadnisky then pulled their vehicles into the parking lot of a nearby Shell station. According to Hepner, when Stadnisky drove into the gas station, he ran over the curb, causing a tire to go flat. After they exited their vehicles, Hepner asked for Stadnisky's insurance information, but he refused to give it to her, contending her car had not been damaged. As a result, Hepner called the police. She testified that Stadnisky was agitated and slurred his words a little.

On cross-examination, Hepner testified that Stadnisky's car was not driveable because it had a flat tire. She also testified that an officer arrived within five minutes, and that this first officer asked both of them to stay until a second officer arrived. According to Hepner, they "[were not] allowed to go anywhere." Hepner could not recall a description of the officer, and he was never identified.

---

[1] (Citation omitted.) *Larsen v. State*, 253 Ga. App. 196-197 (558 SE2d 418) (2002).

The "second" officer, Thomas Frank Hagerty of the City of Duluth Police Department, testified that he was dispatched to the gas station at 12:25 a.m. He testified that when he arrived, he was the only officer at the scene, although backup eventually came. According to Hagerty, Stadnisky smelled strongly of alcohol and his eyes were very bloodshot. Based on these indicators of alcohol consumption, as well as the collision and Stadnisky's demeanor, Hagerty decided to administer field sobriety tests.

Stadnisky exhibited all six of the clues of intoxication on the horizontal gaze nystagmus test; missed three out of eight clues on the walk and turn test; and almost fell down during the one-leg stand. Stadnisky also tested positive for alcohol on the alco-sensor test. Hagerty then placed him under arrest and read him the implied consent rights.

Hagerty took Stadnisky to jail and performed two breath tests on him using the Intoxilyzer 5000. The tests were administered at 1:48 a.m. and 1:51 a.m., and the results were 0.160 grams and 0.166 grams, respectively. Hagerty determined that the tests were conducted within three hours after Stadnisky ceased driving because the original incident call was dispatched at 12:10 a.m. He further testified that he was not aware of the identity of the officer who, according to Hepner, had been at the scene earlier, and that no other officer was at the scene when Hagerty first arrived.

Stadnisky argues that his DUI conviction cannot be sustained because the state failed to eliminate the possibility that he consumed alcohol after his driving ended. Stadnisky's argument erroneously implies that the state must eliminate every possibility of innocence in order to achieve a conviction in a criminal case. Instead, the state must introduce evidence which proves, not beyond all doubt but beyond a reasonable doubt, each element of the crime as prescribed in the statute.

To be sure, when the state's case depends in whole or in part on circumstantial evidence,[2] that evidence must eliminate every reasonable hypothesis except guilt.[3] In the case at bar, the hypothesis asserted by Stadnisky is that his illegal blood alcohol concentration resulted from alcohol consumed after his driving ceased and not from alcohol consumed before his driving ended.[4] Whether this particular

---

[2] The state's case at a criminal trial *always* depends in whole or in part on circumstantial evidence. How else could the state prove intent?

[3] *Dunson v. State*, 202 Ga. 515, 521 (1) (43 SE2d 504) (1947).

[4] Compare *Norton v. State*, 280 Ga. App. 303, 304 (640 SE2d 48) (2006) (state failed to prove that defendant had driven her vehicle within three hours prior to breath test being administered); *Abelson v. State*, 269 Ga. App. 596, 598 (1) (604 SE2d 647) (2004) (no circumstantial evidence showing recent operation of car so as to bring defendant within three-hour window).

hypothesis was a reasonable one was a decision for the trier of fact.[5] Based on the evidence in the record, we cannot say that the trial court's decision was clearly erroneous. To the contrary, the decision seems clearly correct because there was no evidence at trial that Stadnisky consumed alcohol after his collision with Hepner.

2. Stadnisky assigns error to the trial court's denial of his "motion in limine to exclude all evidence gathered as a result of an unlawful seizure," including the results of any chemical test administered to him. He argues that, because the unidentified officer did not testify, the state failed to prove that his encounter with Stadnisky was a "first-tier" encounter involving no coercion or detention and thus outside the protections of the Fourth Amendment and the requirement of a reasonable suspicion of criminal activity.[6] We disagree. "When reviewing a trial court's decision on a motion to suppress, this court's responsibility is to ensure that there was a substantial basis for the decision."[7] "A trial court's order on a motion to suppress will not be disturbed if there is any evidence to support it, and the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous."[8] We construe the evidence most favorably to uphold the judgment.[9]

There are at least three types of police-citizen encounters: "verbal communications which involve no coercion or detention; brief 'stops' or 'seizures' which must be accompanied by a reasonable suspicion; and 'arrests' which can only be supported by probable cause."[10]

> A first-tier encounter never intrudes upon any constitutionally protected interest since the purpose of the Fourth Amendment is not to eliminate all contact between police and citizens, but simply to prevent arbitrary and oppressive police interference with the privacy and personal security of individual citizens. On the other hand, a second-tier encounter may violate the Fourth Amendment if the officer briefly

---

[5] See *Pecina v. State*, 274 Ga. 416, 419 (2) (554 SE2d 167) (2001).

[6] See *Burrell v. State*, 261 Ga. App. 677, 678 (1) (583 SE2d 521) (2003) (no probative evidence of the circumstances under which defendant relinquished his license to officer during traffic stop; state failed to meet burden of showing seizure was lawful); *State v. Tollefson*, 259 Ga. App. 320, 322-323 (1) (b) (577 SE2d 21) (2003) (officers lacked reasonable suspicion to justify seizure of defendant found sleeping behind wheel of parked vehicle); *Kazeem v. State*, 241 Ga. App. 175, 178 (1) (525 SE2d 437) (1999) (officers who initially stopped defendants did not testify; state failed to meet burden of showing stop was justified).

[7] (Citation and punctuation omitted.) *Turner v. State*, 233 Ga. App. 413 (1) (504 SE2d 229) (1998).

[8] (Citations and footnotes omitted.) *State v. Starks*, 281 Ga. App. 15 (635 SE2d 327) (2006).

[9] See id.

[10] (Citation omitted.) *State v. Folk*, 238 Ga. App. 206, 207 (521 SE2d 194) (1999).

"stops" or "seizes" a citizen without reasonable suspicion. Reasonable suspicion exists when an officer has a particularized and objective basis for suspecting that a citizen is involved in criminal activity. Moreover, a "seizure" within the meaning of the Fourth Amendment only occurs when, in view of all the circumstances surrounding the incident, a reasonable person believes that he is not free to leave.[11]

Stadnisky argues that Hepner's testimony that an unidentified officer said that they were not allowed to go anywhere establishes a seizure within the meaning of the Fourth Amendment.[12] But evaluating the credibility of this witness was solely and completely within the province of the trial court, and the court was not obligated to believe this portion of Hepner's testimony, even though it was uncontradicted.[13] Although the trial court's order does not contain explicit findings of fact, we construe the evidence to uphold the judgment denying the motion to suppress. So construed, it appears that the trial court discounted the testimony concerning the existence of the "phantom" first officer. Consequently, we need not consider whether our precedents[14] require the testimony of the unidentified officer who allegedly made the initial "seizure."

In addition, there were abundant objective circumstances that would have been obvious to the "phantom" first officer that would have authorized a seizure. The evidence shows that a collision had occurred; Stadnisky was agitated, smelled strongly of alcohol, failed an alco-sensor test, and had bloodshot eyes. "The validity of the [seizure] depends not on the officer's actual state of mind but on an objective assessment of his actions in light of all the facts and circumstances confronting him at the time."[15] Given that the objective facts, as testified to by Hepner and obvious to anyone at the scene, would have given rise to a reasonable suspicion of criminal activity, any subjective reason for which this "phantom" officer may have detained Stadnisky is not relevant.[16]

---

[11] (Citations omitted.) Id.

[12] Such testimony appears to be a "verbal act" and thus original evidence rather than hearsay. See *Wright v. State*, 226 Ga. App. 848, 850 (5) (487 SE2d 405) (1997); *Trotter v. State*, 216 Ga. App. 612, 613 (1) (455 SE2d 121) (1995); *Thurman v. State*, 207 Ga. App. 96, 99 (3) (427 SE2d 69) (1993).

[13] *Tate v. State*, 264 Ga. 53, 56 (3) (440 SE2d 646) (1994).

[14] *Burrell*, supra; *Tollefson*, supra; *Kazeem*, supra.

[15] (Citation omitted.) *Montoya v. State*, 232 Ga. App. 24, 25 (2) (a) (499 SE2d 680) (1998).

[16] *Cole v. State*, 254 Ga. App. 424, 426 (2) (562 SE2d 720) (2002) ("Because we decide whether reasonable suspicion justifies a detention based on all the objective facts, we are not

Finally, regardless of whether he had been "seized," Stadnisky had an independent duty to remain at the scene of the accident. As pertinent to the case at bar, OCGA § 40-6-270 (a) provides:

(a) The driver of any vehicle involved in an accident resulting . . . in damage to a vehicle which is driven or attended by any person shall immediately stop such vehicle at the scene of the accident . . . and shall:
(1) Give his name and address and the registration number of the vehicle he is driving; [and]
(2) Upon request and if it is available, exhibit his operator's license to the person struck or the driver or occupant of or person attending any vehicle collided with. . . .
The driver shall in every event remain at the scene of the accident until fulfilling the requirements of this subsection.

Hepner testified that Stadnisky refused to give her his insurance information. On cross-examination, defense counsel asked Hepner to relay the conversation that she had with Stadnisky. Hepner testified: "Well, we were both calmly upset about it. I asked for his information, and he said that all the damage was done to his car and that he didn't want to give me his information." The above-cited statute placed upon Stadnisky a positive duty to remain at the scene until he provided his name, address, and vehicle registration number. There is no evidence that he provided this information; in fact, it may be inferred from Hepner's testimony that Stadnisky did not do so. Thus, the trial court could have determined that Stadnisky's duty to remain at the scene arose from OCGA § 40-6-270 (a) and not from any detention within the meaning of the Fourth Amendment.[17] It follows that the trial court's decision to deny the motion to suppress was not clearly erroneous.

3. Stadnisky contends the trial court erred in admitting the Intoxilyzer 5000 inspection certificates prepared under OCGA § 40-6-392 (f), arguing that they are inadmissible hearsay. This contention is controlled adversely to him by our Supreme Court's affirmance of *Rackoff v. State*.[18]

---

limited by the detaining officer's subjective opinions."), citing *United States v. Jones*, 990 F2d 405, 408 (8th Cir. 1993), cert. denied, *Jones v. United States*, 510 U. S. 934 (114 SC 350, 126 LE2d 314) (1993).

[17] See *Turner*, supra at 415 (1) (a) (suspect was not in custody for *Miranda* purposes, although he had been placed in the back of a patrol car, because he had a duty to remain at the scene of the accident); *Morrissette v. State*, 229 Ga. App. 420, 421 (1) (a) (494 SE2d 8) (1997) (same).

[18] 275 Ga. App. 737, 740-741 (2) (621 SE2d 841) (2005), aff'd, 281 Ga. 306, 309 (2) (637 SE2d 706) (2006).

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED MARCH 8, 2007 —
RECONSIDERATION DENIED APRIL 12, 2007.

Robert W. Chestney, for appellant.
Gerald N. Blaney, Jr., Solicitor-General, Gary S. Vey, Julie Bedore Potts, Assistant Solicitors-General, for appellee.