## A09A0295. BROWN v. THE STATE.
(680 SE2d 579)

BARNES, Judge.

William Larry Brown appeals his convictions, after a bench trial, of two counts of making terroristic threats. He contends only that the trial court erred by denying his motion for a directed verdict[1] because "any threats that may have been made were not communicated, nor intended or expected to be communicated, either directly or by inference, to the alleged victims." We disagree and for the reasons stated below, we affirm Brown's convictions.

When reviewing a conviction after a bench trial, we view the evidence in favor of the trial court's finding of guilt, giving due regard to the trial court's opportunity to judge witness credibility.

---

[1] "As a preliminary matter we note that the trial court could not have directed a verdict of acquittal because there is no verdict in a bench trial. Therefore, even if a motion for a directed verdict was made, such a motion has no meaning when a case is tried without a jury." See *Blair v. State*, 216 Ga. App. 545, 546 (1) (455 SE2d 97) (1995). *Jones v. State*, 226 Ga. App. 608, 609 (487 SE2d 89) (1997).

LAW LIBRARY

The issue before us is whether the evidence was sufficient to support a conviction under the standards of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). *Stadnisky v. State*, 285 Ga. App. 33, 34 (1) (645 SE2d 545) (2007). Therefore, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998). We do not weigh the evidence nor do we determine the witness's credibility. Instead, we determine only whether the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt. *Jackson*, supra, 443 U. S. 307. The plain legal error standard of review is applied to a trial court's ruling on a legal question. *Suarez v. Halbert*, 246 Ga. App. 822, 824 (1) (543 SE2d 733) (2000).

Viewed in favor of the trial court's finding of guilt, the evidence shows that, Brown and his wife were in the middle of a contested divorce when he took his son and fled to Mexico, where he was apprehended and a month later returned to Georgia. While in a holding area[2] before being arraigned on June 14, 2007, Brown asked his former attorney if everything he said to her was confidential. After she said, "Yes," Brown told her that "when this is over I'm going to kill [my wife], I'm going to kill her mother, and then I'm going to kill myself."

Additionally, Brown's mother had given the attorney letters that Brown sent to her. In one of these letters, Brown recited the fable of the "Scorpion and the Frog," and to which Brown added, "Both die but their children are now much better off." On one of the letters Brown noted "redrum," which is "murder" spelled backward, seemingly a reference to a movie. Brown also wrote across the bottom of the letter, "Kill, kill, I kill, illk, illk, illk" and many obscenities. Another of Brown's letters to his mother enclosed a letter to his son that he wanted given to him. The letter assumes that Brown is dead, his wife is dead, and his son is living with his paternal grandmother. It contained many derogatory references to the boy's mother, and included the statement that "you understand why I had to do what I had to do." Later, Brown sent his attorney a letter complaining about her defense of him and closed with the statement, "Never is a man more free than one with nothing to lose. I'll be back," and "Crime: Loving my son."

The attorney also testified that while counseling Brown shortly before his sentencing for interfering with his son's custody, Brown said, "You suppose they'll let me rent a car and drive to California?"

---

[2] Brown, in custody, was defending a charge that he had kidnapped his son. He later pled to interference with custody and was sentenced to two years in prison.

As a result of Brown's statements and conduct, his letters to her and his mother, and her realization that Brown was going to be released in Georgia after only a short stay in prison, the attorney became very scared and concerned about Brown's future conduct. Consequently, she sought the advice of the State Bar, and, after being advised by the State Bar, the attorney reported Brown's statements to the authorities.

Brown was indicted on two counts of violating OCGA § 16-11-37 in that he "did threaten to commit Murder, a crime of violence, in reckless disregard of the risk of causing terror to [the victim, his ex-wife,]" and that he "did threaten to commit Murder, a crime of violence, in reckless disregard of the risk of causing terror to [the victim, his ex-mother-in-law]."

OCGA § 16-11-37 (a) provides that

[a] person commits the offense of a terroristic threat when he or she threatens to commit any crime of violence, to release any hazardous substance, as such term is defined in Code Section 12-8-92, or to burn or damage property with the purpose of terrorizing another or of causing the evacuation of a building, place of assembly, or facility of public transportation or otherwise causing serious public inconvenience or in reckless disregard of the risk of causing such terror or inconvenience

and that "[n]o person shall be convicted under this subsection on the uncorroborated testimony of the party to whom the threat is communicated."

A person commits the offense of a terroristic threat when he threatens to commit any crime of violence. OCGA § 16-11-37 (a). When the communication of a threat is done to terrorize another, the crime of terroristic threats is complete. Direct evidence that the threats were made for the purpose of terrorizing another is not necessary if the circumstances surrounding the threats are sufficient for a jury to find the threats were made for such a purpose.

(Citations and punctuation omitted.) *Jordan v. State*, 214 Ga. App. 346, 347 (447 SE2d 341) (1994). Further, OCGA § 16-11-37 encompasses threats of physical violence directed toward an absent third party. *Shepherd v. State*, 230 Ga. App. 426, 427 (496 SE2d 530) (1998).

Brown contends that under the facts of this case he did not communicate the threat to his wife and mother-in-law directly or

548

indirectly,[3] and he did not intend that the threat be communicated to them. Nevertheless, the fact that Brown did not communicate the threats directly to the victims does not alone preclude a conviction if the threat is stated in a manner which will support the inference that the speaker intended or expected the threat to be conveyed to the victim. *Armour v. State*, 265 Ga. App. 569, 571 (1) (594 SE2d 765) (2004). The intent with which one does an act, however, is particularly an issue for the finder of fact. Further, one's intent is often difficult to prove with direct evidence. *In the Interest of C. L. B.*, 267 Ga. App. 456, 458 (600 SE2d 407) (2004). Consequently, intent is often proved through the use of circumstantial evidence. Id.

The evidence shows that Brown frequently used law books while in jail, and wrote to his attorney about what he thought the law was and how she should proceed with the case. Brown liked to read the law and tell her about it and tell her how the trial should proceed. Most importantly, in a letter to his attorney, dated May 10, 2007, almost a month before he made the threats to murder his wife and mother-in-law, he asked his attorney, "How far does the attorney-client privilege go? Are there any exceptions?"

These questions show two things: Brown was familiar with the attorney-client privilege, indeed apparently more familiar than the typical defendant as he was aware that the privilege had exceptions, and as a result of his knowledge of the exceptions, it is difficult to believe that he did not know that certain communications to his attorney, specifically his plans for future crimes, would not be privileged.[4] From this awareness, coupled with Brown's letters, and his increasingly bizarre conduct and statements, the factfinder could conclude that Brown intended to cause his attorney to believe that he was determined to carry out his threats and that she must report the threats to keep him from carrying them out. These factors distinguish this case from *Stephens v. State*, 271 Ga. App. 509 (610 SE2d 143) (2005), because nothing in *Stephens* showed "any evidence to support an inference that Stephens intended or expected the [threat] to be communicated to [the victim]." (Footnote omitted.) Id. at 510.

Thus, the factfinder could infer that, when Brown made the threats, he intended that his threats would be communicated to the victims and that the letters and his conduct were designed to ensure that the threats were communicated to his wife and mother-in-law.

---

[3] Brown's wife and his mother-in-law both testified that during this time, Brown never threatened them and they were not aware that Brown attempted to communicate with them in any manner.

[4] The privilege communication applies to crimes already committed, but not to contemplated crimes against society, frauds, or perjuries. *Marriott Corp. v. American Academy of Psychotherapists*, 157 Ga. App. 497, 502 (3) (b) (277 SE2d 785) (1981).

LAW LIBRARY

Therefore, the evidence is sufficient to show that Brown "expected or intended" the threat would be communicated to the victims. *Armour v. State*, supra, 265 Ga. App. at 571 (1).

Accordingly, we find that the evidence was sufficient to sustain Brown's convictions under the standards of *Jackson v. Virginia*, supra.

*Judgment affirmed. Miller, C. J., and Andrews, P. J., concur.*

DECIDED JUNE 25, 2009.

*Peter D. Johnson*, for appellant.
*Rebecca A. Wright, District Attorney, Madonna M. Little, Assistant District Attorney*, for appellee.

