A09A0746. JOHNSON v. THE STATE.
(682 SE2d 601)

BERNES, Judge.

Following a stipulated bench trial, Kathy Green Johnson appeals her DUI conviction. Johnson argues that the trial court erred by denying her motion to suppress evidence allegedly obtained as the result of an unlawful detention. We find no error and affirm.

On appeal from the denial of a motion to suppress, we defer to the trial court's findings of disputed facts but review de novo the court's application of the law to the undisputed facts. *Williams v. State*, 297 Ga. App. 626 (677 SE2d 773) (2009). See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). To the extent that the controlling facts in this case are undisputed because they are plainly discernable from the patrol car-mounted video

recording, we review those facts de novo. *Lyons v. State*, 244 Ga. App. 658, 658-659 (535 SE2d 841) (2000).

The evidence presented to the trial judge during the motions hearing showed that Johnson was the owner of a daycare center in Carrollton. On the day in question, police were dispatched to the daycare center after a 911 caller reported a violent domestic disturbance on the premises.

After the responding officer arrived, he learned that the alleged victim of the domestic violence incident worked as an employee at the daycare center. The alleged perpetrator had been repeatedly calling and harassing both the victim and a second employee at the daycare center. The perpetrator came to the daycare center and assaulted the victim, ultimately tearing off her shirt.[1] The alleged assault occurred in the middle of the afternoon, with children present.

During the course of his investigation, the officer learned that Johnson was present during the assault, but that it was the victim's father who called 911 to report the incident. The victim's father told the officer that when Johnson learned that 911 had been called, she got into a van and "left real quick." The father also told the officer that he believed that Johnson may have been drinking alcohol.

As the officer was concluding his investigation, Johnson entered the parking lot driving a van full of children and ordered the officer to move his patrol car. The officer declined to move his vehicle, but made it clear to Johnson that he wanted to discuss with her the importance of calling 911 when a violent incident occurred on her premises that potentially placed the children at risk. Although the officer did not smell alcohol on Johnson at that time, he noticed that her eyes were glassy and described her as being in an "overemotional state." The officer allowed Johnson to unload the children from the bus and take them inside, but told her to return when she was finished. After waiting for approximately five minutes, the officer viewed Johnson through an office window and motioned for her to return outside. She complied.

The officer engaged Johnson in a conversation in which he repeatedly emphasized to her how he considered her negligent and derelict in protecting the safety of her children by failing to call 911. During this exchange, the officer smelled alcohol on Johnson's breath and called for a second officer to conduct a roadside sobriety test. The events that followed ultimately led to Johnson's submission

---

[1] The allegations underlying the domestic incident are not in dispute in this appeal and serve only to explain the circumstances surrounding the 911 call and the officer's conduct during his investigation. We take no position on the veracity of the allegations made by the victim against the suspect.

to a breath test which revealed that she had an alcohol concentration of 0.15 grams.

Johnson was arrested and charged with less safe DUI, in violation of OCGA § 40-6-391 (a) (1); per se DUI, in violation of OCGA § 40-6-391 (a) (5); and eight counts of child endangerment, in violation of OCGA § 40-6-391 (l). Johnson moved to exclude all physical and testimonial evidence gathered after the point in which the officer signaled her through the window to return outside, arguing that the officer's command amounted to an unlawful seizure in violation of the Fourth Amendment to the United States Constitution. After an evidentiary hearing, the trial court denied the motion, finding that the officer's conduct at all times was reasonable in light of the circumstances presented. The parties then stipulated to the evidence presented during the hearing for the purposes of a bench trial, and the trial court found Johnson guilty on all counts. This appeal followed.

Johnson contends that the officer's insistence that she return outside after she was permitted to enter into the daycare facility amounted to an unlawful detention without an articulable suspicion of criminal activity.

> There are three tiers of police-citizen encounters: (1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief "seizures" that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause.

(Citation and punctuation omitted.) *McClain v. State*, 226 Ga. App. 714, 716 (1) (487 SE2d 471) (1997). A police-citizen encounter remains consensual and does not implicate the Fourth Amendment "[s]o long as a reasonable person would feel free to disregard the police and go about his business." (Footnote omitted.) *Ward v. State*, 277 Ga. App. 790, 791-792 (627 SE2d 862) (2006). A seizure requiring a showing of reasonable suspicion has occurred, however, once a reasonable person no longer believes that he is free to leave. *McClain*, 226 Ga. App. at 716 (1). At that point,

> [t]he detention must be justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the detention, and the [officer] must have some basis from which the court can determine that the detention was neither arbitrary nor harassing.

*State v. Gibbons*, 248 Ga. App. 859, 864 (2) (547 SE2d 679) (2001).

We agree with Johnson that her encounter with the officer elevated to a second tier encounter once the officer made it clear that she was not authorized to disregard his request that she return outside. See, e.g., *Ward,* 277 Ga. App. at 792; *Davidson v. State,* 257 Ga. App. 260, 263 (1) (b) (570 SE2d 698) (2002). We do not agree, however, with Johnson's contention that the temporary detention was not justified by a reasonable suspicion of criminal activity.

At the time that the officer detained Johnson, he was aware that Johnson had failed to call 911 when a violent domestic disturbance had occurred on her premises that potentially placed the children at risk, and that she had "left real quick" upon learning that the police had been summoned. The officer had also been informed Johnson may have been drinking. Finally, when Johnson returned driving a van full of young children, the officer observed that she had glassy eyes and was in an "over-emotional state." These specific and articulable facts, taken together with rational inferences from those facts, warranted the officer's temporary detention of Johnson based on a reasonable suspicion that she had committed the crime of driving under the influence of alcohol. See generally *Maloy v. State,* 293 Ga. App. 648, 650 (1) (667 SE2d 688) (2008) (the observation of glassy eyes and suspicious demeanor of a driver may justify a temporary detention); *Veal v. State,* 273 Ga. App. 47, 49-50 (614 SE2d 143) (2005) (the behavior giving rise to a reasonable suspicion of unlawful activity need not itself be unlawful); *Johnson v. State,* 251 Ga. App. 659, 661 (3) (555 SE2d 34) (2001) (an apparent attempt to avoid police in conjunction with other factors can give rise to a reasonable suspicion of criminal activity).

Moreover, the fact that a violent domestic disturbance had erupted in the presence of children under Johnson's care and control and Johnson failed to summon the police supported a reasonable suspicion that she may also have been guilty of reckless conduct. See OCGA § 16-5-60 (b) ("A person who . . . endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his act or omission will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation is guilty of a misdemeanor."); *Baker v. State,* 280 Ga. 822, 823 (1) (633 SE2d 541) (2006) (the act of leaving a nine-month-old child in a walker unsupervised on the second floor of a townhome with no protective device blocking the stairs supported appellant's conviction of reckless conduct); *Reyes v. State,* 242 Ga. App. 170, 172-173 (1) (529 SE2d 192) (2000) (inadequate supervision that exposes a child to a foreseeable, substantial and unjustifiable risk supports a finding of reckless conduct); *McCauley v. State,* 222 Ga. App. 600, 601 (475 SE2d 669) (1996)

(reckless conduct conviction predicated upon appellant's act of endangering a child by striking an officer while holding the child).

As pointed out by Johnson, the officer testified that when he signaled Johnson to come outside, he did not suspect her of criminal wrongdoing, but intended only to discuss with her the importance of calling 911 for assistance when children are exposed to potentially dangerous circumstances. Nevertheless, when analyzing whether a person has been unconstitutionally seized, we are not bound by the detaining officer's subjective belief. See *Garrett v. State*, 259 Ga. App. 870, 875 (2) (578 SE2d 460) (2002); *Cole v. State*, 254 Ga. App. 424, 426 (2) (562 SE2d 720) (2002). Rather, the touchstone of any Fourth Amendment analysis is a determination of whether an officer's conduct is reasonable based upon all of the objective facts. *Hayes v. State*, 292 Ga. App. 724, 729 (2) (c), n. 32 (665 SE2d 422) (2008). The circumstances presented here illustrate that the officer's conduct was neither arbitrary nor harassing, but was reasonable in light of the objective facts available to him. See *Maloy*, 293 Ga. App. at 650 (1); *Davidson*, 257 Ga. App. at 263-264 (1) (b); *Johnson*, 251 Ga. App. at 661 (3). The trial court's denial of Johnson's motion to suppress was therefore authorized.

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

## ON MOTION FOR RECONSIDERATION.

On motion for reconsideration, Johnson asserts that this Court, for the first time, has expanded Georgia law by conducting an objective analysis of the facts known to the officer in order to determine whether the investigatory detention was justified by a reasonable suspicion of criminal activity despite the officer's testimony that he did not actually suspect her of criminal wrongdoing.

First, we disagree with the premise of Johnson's argument. Our conclusion that the reasonable suspicion analysis is an objective one is absolutely consistent with the prior precedent of our appellate courts. See *Garmon v. State*, 271 Ga. 673, 678 (3) (524 SE2d 211) (1999) (considering insignificant the fact that the officers testified to their predetermined plan to stop all vehicles leaving a home under surveillance because "the legality of the initial stop and detention under a *Terry*-type rationale . . . is based on objective criteria, not on the subjective or ulterior motive of police"); *Stadnisky v. State*, 285 Ga. App. 33, 37 (2) (645 SE2d 545) (2007) (rejecting appellant's argument that he had been unlawfully detained by an unidentified officer who did not testify at the motion hearing because, "[g]iven that the objective facts . . . would have given rise to a reasonable suspicion of criminal activity, any subjective reason for which this [unidentified] officer may have detained [appellant] is not rel-

evant"); *Garrett v. State*, 259 Ga. App. 870, 875 (2) (578 SE2d 460) (2002) (holding that trial counsel was not ineffective for failing to move to suppress evidence on the ground that the detention was illegal because, regardless of whether the officer believed that reasonable suspicion existed, "we decide whether reasonable suspicion justifies a detention based on all the objective facts [and] are not limited by the detaining officer's subjective opinions"); *Cole v. State*, 254 Ga. App. 424, 426 (2) (562 SE2d 720) (2002) ("The officer's subjective belief that he lacked authority to detain [appellant] for continued investigation does not control where the facts objectively show the officer had such authority."). Cf. *Kline v. KDB, Inc.*, 295 Ga. App. 789, 791 (1) (673 SE2d 516) (2009) ("[I]f the objectively viewed facts and circumstances were sufficient to establish probable cause to arrest for some offense, the arrest was not unlawful because the officer subjectively based the arrest on an offense for which probable cause was lacking."); *Farmer v. State*, 156 Ga. App. 837, 839 (2) (275 SE2d 774) (1980) ("[I]n spite of the police officer's belief that probable cause was lacking . . . , the trial court still had the independent duty to determine objectively if probable cause was present."). Compare *State v. Tollefson*, 259 Ga. App. 320, 322 (1) (b) (577 SE2d 21) (2003) (affirming the trial court's grant of appellant's motion to suppress when both a subjective and objective analysis of the facts failed to give rise to a reasonable suspicion of criminal activity).

Second, the objective nature of Fourth Amendment inquiries into the reasonableness of police conduct has been repeatedly emphasized by the United States Supreme Court. See, e.g., *Whren v. United States*, 517 U. S. 806, 813 (II) (A) (116 SC 1769, 135 LE2d 89) (1996) ("[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.") (citation and punctuation omitted); *Maryland v. Macon*, 472 U. S. 463, 470-471 (II) (A) (105 SC 2778, 86 LE2d 370) (1985) ("Whether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time, and not on the officer's actual state of mind at the time the challenged action was taken.") (citation, punctuation and emphasis omitted); *Scott v. United States*, 436 U. S. 128, 136 (II) (98 SC 1717, 56 LE2d 168) (1978) ("Subjective intent alone . . . does not make otherwise lawful conduct illegal or unconstitutional.").

And, like the vast majority of the courts that have examined the issue, we reject Johnson's contention that the determination as to whether an investigative detention is justified by a reasonable suspicion of criminal conduct should be treated differently from

other Fourth Amendment inquiries. See *United States v. Ford*, 333 F3d 839, 841-845 (A), (C) (7th Cir. 2003) (engaging in an objective analysis to determine whether a pat-down search was justified by reasonable suspicion even though the officer conducting the search did not suspect appellant of any wrongdoing); *United States v. Jones*, 990 F2d 405 (8th Cir. 1993) (objective facts proved reasonableness of seizure despite the officers' subjective beliefs that they lacked reasonable suspicion); *United States v. McKie*, 951 F2d 399, 402 (II) (D.C. Cir. 1991) ("The *Terry* standard being one of objective reasonableness, we are not limited to what the stopping officer says or to evidence of his subjective rationale; rather, we look to the record as a whole to determine what facts were known to the officer and then consider whether a reasonable officer in those circumstances would have been suspicious."); *Commonwealth v. Smigliano*, 694 NE2d 341, 344 (1) (Mass. 1998) (officer's testimony that he did not suspect defendant of criminal wrongdoing did not render seizure unreasonable); *State v. Hawley*, 540 NW2d 390, 392 (N.D. 1995) (finding reasonable suspicion based on the objective facts even though the officer "had no suspicion of illegal activity whatsoever"); *State v. Warren*, 78 P3d 590, 595-596 (III) (A), (B) (Utah 2003) (surveying existing law and adopting the majority position that the reasonableness of a *Terry* frisk must be evaluated objectively and cannot be invalidated by an officer's subjective belief alone). See also *United States v. Adamson*, 441 F3d 513, 519-521 (II) (B) (7th Cir. 2006); *United States v. Holt*, 264 F3d 1215, 1225-1226 (II) (10th Cir. 2001); *United States v. Baker*, 47 F3d 691, 694-695 (5th Cir. 1995); *United States v. Hawkins*, 811 F2d 210, 212-215 (II) (3rd Cir. 1987); *United States v. Gonzalez*, 954 FSupp. 48, 50-51 (2) (D. Conn. 1997); *People v. Sherman*, 29 Cal. App. 4th 1085, 1089-1092 (I) (1993); *State v. Heminover*, 619 NW2d 353, 356-362 (II) (Iowa 2000), rev'd on other grounds, *State v. Turner*, 630 NW2d 601, 606 (II), n. 2 (Iowa 2001); *State v. Loza*, 973 S2d 178 (La. Ct. App. 2007); *State v. Peck*, 291 SE2d 637, 641-642 (N.C. 1982); *Zimmermann v. North Dakota Dept. of Transp. Director*, 543 NW2d 479, 482-483 (III) (C) (N.D. 1996); *State v. Kyles*, 675 NW2d 449, 454-455 (III) (Wis. 2004). Cf. *United States v. Griffin*, 109 F3d 706, 707-708 (11th Cir. 1997). Compare *United States v. Lott*, 870 F2d 778, 783-784 (IV) (1st Cir. 1989); *United States v. Prim*, 698 F2d 972, 975 (9th Cir. 1983); *State v. Rawlings*, No. 18705, 1991 Ida. App. LEXIS 119, at *13-14 (I) (B) (1) (June 6, 1991); *DiPasquale v. State*, 406 A2d 665, 667 (Md. Ct. Spec. App. 1979).

In sum, the fundamental purpose of the exclusionary rule is to discourage police misconduct. *State v. Armstrong*, 223 Ga. App. 350, 352-353 (2) (477 SE2d 635) (1996). Simply stated, not only was the officer's conduct objectively reasonable given the circumstances

confronting him, but the facts presented here do not implicate the concerns embodied within the exclusionary rule so as to warrant the suppression of any evidence obtained in this case.

*Motion for reconsideration denied.*

DECIDED JULY 2, 2009 —
RECONSIDERATION DENIED JULY 30, 2009 

*Robert W. Chestney*, for appellant.

*Douglas C. Vassy, Solicitor-General, Stephen J. Tuggle, Assistant Solicitor-General*, for appellee.