A99A1698. KAZEEM v. THE STATE.
A99A1699. ARAMOLATE v. THE STATE.
(525 SE2d 437)

JOHNSON, Chief Judge.

After a joint bench trial, Taofik Kazeem was convicted of financial transaction card theft, and his co-defendant, Ajibola Aramolate, was convicted of forgery and giving a false name. Because the men raise similar issues on appeal, we have consolidated their appeals.

1. Kazeem and Aramolate contend the trial court erred in denying their motions to suppress evidence seized from Kazeem's car and from Aramolate's wallet found in the car. They complain that the state failed to prove that the officers who stopped them had a reasonable articulable suspicion justifying the stop. We agree that the evidence presented during the hearing and trial does not support the trial court's determination that the detention was lawful. Therefore, we reverse.

Our responsibility in reviewing a trial court's decision on a motion to suppress is to ensure that there was a substantial basis for the decision.[1] On appeal, we construe the evidence most favorably to uphold the judgment of the trial court.[2]

So construed, the evidence shows that the branch manager of Regent Bank was watching for suspicious people because two of the bank's other branches had been robbed recently. She saw Aramolate walk toward the rear of the bank from a car parked behind some trees in a grocery store parking lot. She thought this was odd because parking was available at the bank and people rarely walked that route. Aramolate entered the bank and picked up dozens of bank pamphlets and credit applications. The bank manager testified that Aramolate paid little attention to the papers he was gathering and instead looked mostly at the employees, customers, and security cameras. When bank employees asked him if he needed help, he said he did not. Aramolate left the bank and walked back to the car. The bank manager watched as Kazeem drove the car away. She immediately called 911 and told the dispatcher that there had been a suspicious person in the bank. She gave the dispatcher descriptions of Aramolate and the car and the direction in which the car had traveled.

The manager testified that the car returned a few minutes later, traveled through the bank parking lot and parked in the grocery store parking lot. This time Kazeem got out of the car and walked to the bank, using the same route as Aramolate. Once inside, Kazeem asked about other branch locations. The manager gave him a brochure, and he left. The manager called the police again, told them there was a second man involved, and described Kazeem. When asked what information she gave police in her 911 calls, she testified that she only said there was a suspicious person, described the first man, said which way he exited the bank and, in a later call, described the second man. She apparently did not convey in her phone calls most of the details included in her testimony.

A police officer testified that he heard police radio broadcasts

---

[1] *State v. Wesson*, 237 Ga. App. 789, 790 (516 SE2d 826) (1999).
[2] Id.

stating that a man had come into the bank, requested information about opening an account and was picking up brochures at random without paying attention to what he was picking up. The transmission included information that the man was watching bank employees and customers, that he had left, and was now returning. The officer did not recall hearing that the man looked at security cameras and did not mention hearing any other details in the radio broadcast.

When the officer arrived at the grocery store parking lot, he saw that two fellow officers had already stopped Kazeem and Aramolate. The officer testified that he arrived a couple of minutes after the other two officers. At that time, Kazeem was standing beside a police car, and Aramolate was sitting in Kazeem's car. The other two officers were questioning the men, and according to the third officer, the men were not free to leave at that time. The third officer did not question the men, but "[k]ind of stood by." The officer overheard the detaining officers request and obtain consent from Kazeem to search the car.

In searching the car, police found a gas credit card in the name of "Mark Abraham," and Aramolate's wallet containing a driver's license bearing his photograph and the name "Kevin Soderholm." Police charged Kazeem with theft of the credit card, and Aramolate with forging the driver's license and giving officers a false name.

We hold that, because it is unclear what facts the officers who initiated the stop had before they made the stop, the evidence should have been suppressed. "Although an officer may conduct a brief investigative stop of a vehicle, such a stop must be justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."[3] The totality of the circumstances is taken into account in determining whether the detaining officer has a particularized and objective basis for suspecting the person stopped of criminal conduct.[4] The legality of the stop depends upon what information police officers had prior to making the stop.[5]

Here, the two officers who actually initiated the stop and detained Kazeem and Aramolate did not testify at the motion to suppress hearing or at trial. The only police officers called as witnesses were: (1) the third officer, who arrived on the scene minutes after the stop occurred; (2) an off-duty officer who heard the radio broadcast regarding a "suspicious person" or "suspicious vehicle" from inside the grocery store and notified police that the car was still in the store

---

[3] (Citation and punctuation omitted.) *Attaway v. State*, 236 Ga. App. 307, 308 (511 SE2d 635) (1999).

[4] Id.; *Bonner v. State*, 233 Ga. App. 215, 216 (504 SE2d 27) (1998).

[5] *Oboh v. State*, 217 Ga. App. 553, 555 (458 SE2d 177) (1995).

parking lot; this officer "barely heard" the transmission and could not recall any details of the broadcast; and (3) a detective who arrived later to investigate the incident. The state has not offered any explanation for its failure to call as witnesses the officers who actually made the stop. Without the testimony of the officers who stopped and detained Aramolate and Kazeem, we do not know what information those officers had before making the stop and whether they had an objective and particularized basis for stopping the men. Therefore, the state has not met its burden of showing that the stop was justified.[6]

The fact that the bank manager may have had specific facts supporting her suspicion that the men were "casing" the bank does not make the stop lawful. As we held in *Oboh*,[7] the bank employee must communicate to the police a factual basis for her suspicion. Although the bank manager's testimony at the hearing and trial regarding her suspicions was specific, her call to police before the stop occurred was not so detailed.

Nor is the stop justified by the fact that officers other than the two making the stop had heard some of the facts relied upon by the bank manager. It is true that information which police transmit to one another can create an articulable suspicion justifying a stop.[8] A detaining officer is entitled to rely on information given him by fellow officers in forming an articulable suspicion.[9] However, assuming the information contained in the radio transmission was sufficient to give rise to a reasonable suspicion of criminal conduct, there is no evidence that the officers who stopped the men heard the broadcast.[10] The burden of proving that the men were not stopped illegally rests upon the state.[11] Because there is no evidence that the detaining officers had a reasonable suspicion that Kazeem and Aramolate were, or were about to be, engaged in criminal activity, the stop and detention were illegal.[12] The trial court's denial of the motions to suppress must be reversed.

2. Based on the foregoing, we need not consider the remaining enumeration of errors.

*Judgments reversed. McMurray, P. J., and Phipps, J., concur.*

---

[6] See generally *Barnes v. State*, 228 Ga. App. 44, 46 (491 SE2d 116) (1997).
[7] Supra at 555-556.
[8] *Walton v. State*, 194 Ga. App. 490, 491 (2) (390 SE2d 896) (1990).
[9] *Fritzius v. State*, 225 Ga. App. 642, 646 (484 SE2d 743) (1997).
[10] Compare *Hestley v. State*, 216 Ga. App. 573 (1) (455 SE2d 333) (1995).
[11] *State v. Holler*, 224 Ga. App. 66, 69 (2) (479 SE2d 780) (1996).
[12] See *Tarwid v. State*, 184 Ga. App. 853, 856 (363 SE2d 63) (1987).

DECIDED NOVEMBER 18, 1999 —
RECONSIDERATION DENIED DECEMBER 1, 1999.

*H. Glenn Fogle, Jr.*, for appellant (case no. A99A1698).
*Barry M. Hazen*, for appellant (case no. A99A1699).
Ajibola Aramolate, *pro se.*
*Patrick H. Head, District Attorney, Michael S. Moody, Ann B. Harris, Assistant District Attorneys*, for appellee.