A11A1662. WILLIAMS v. THE STATE.

(726 SE2d 66)

MCFADDEN, Judge.

Gregory Williams was charged with an armed robbery that occurred on April 15, 2007. He moved to suppress evidence, contending that an inculpatory statement he made to law enforcement officers was involuntary and that various evidence, including his statement, was the fruit of an illegal stop of his car. The trial court denied Williams's motions to suppress, finding that the statement was voluntary and that the stop of Williams's car was not illegal, and Williams was convicted after a jury trial. He argues on appeal that the evidence was insufficient to support his conviction, that the court erred in denying his motion for directed verdict, that the court erred in allowing hearsay testimony, that the court erred in denying his motion to suppress, and that he received ineffective assistance of counsel.

As detailed below, the evidence was sufficient to support Williams's conviction, so the trial court did not err in denying his motion for directed verdict. Williams has failed to demonstrate the merits of his hearsay claim because he has not cited to the place in the record where the alleged hearsay occurred.

As to the motion to suppress, the court properly ruled that Williams's inculpatory statement was not subject to suppression as involuntary. But the trial court erred in ruling that the stop of Williams's car was constitutional, because the state failed to meet its burden on that point. Because of that erroneous ruling, the trial court did not consider whether the challenged evidence should have been suppressed as fruit of the illegal stop. Williams has waived his appeal of one of these pieces of evidence (a handgun found in his car) by affirmatively stating that he had no objection to its admission at trial. As to the other pieces of challenged evidence, however, we

vacate the order denying the motion to suppress and remand for further proceedings not inconsistent with this opinion. Given this disposition, we do not reach Williams's claims of ineffective assistance of counsel.

The following evidence was presented at trial. A store clerk testified that on April 15, 2007, a person came into the store, pointed a silver gun at her, and took money from the store's cash register. Similar transaction witnesses testified about other armed robberies in the area that had occurred in April 2007. A police officer investigating the series of robberies testified that he suspected that a man known as Harry Wright was involved and that the weapon used in the robberies was a nine-millimeter silver and black gun. The investigator further testified that on April 18 he received information that Wright had been seen riding as a passenger in a car, and he issued a "be on the lookout" to other officers. Another officer stopped a car driven by Williams in which Wright was a passenger. The investigator arrived on the scene immediately afterward.

During the stop, Williams told the investigator that there was a gun in the car's center console. Williams consented to a search of the car, which yielded a nine-millimeter pistol that was admitted into evidence at trial. Similar transaction witnesses testified that the gun looked like that used in some of the other robberies.

The investigator testified that Williams voluntarily accompanied him to the sheriff's office and, after being read his *Miranda* rights, was interviewed. He was not under arrest at that time. During the interview, Williams stated that he had participated in the series of armed robberies by driving Wright to the locations that were robbed, described what Wright was wearing during the robberies, and stated that the gun found in the console of the car was his and had been used in the armed robberies. The state also introduced evidence that Williams had bought a nine-millimeter gun from a pawn shop in 2000.

Wright testified at trial that he had committed the series of armed robberies, including the armed robbery on April 15, 2007, and that Williams had participated by selecting the stores to rob, supplying the gun, acting as the getaway driver, and receiving part of the stolen money. Law enforcement officers testified that Wright also implicated Williams during an interrogation. Evidence was presented that Wright consented to a search of his hotel room, in which law enforcement officers found items of clothing matching those worn by the armed robber; the clothing was admitted into evidence.

A person who had shared a cell block with Wright testified that Wright told him Williams was not involved in the armed robberies. Williams also testified. He denied participating in the armed robberies and explained that he had said otherwise in his police interview

because he had felt scared and nervous. He admitted purchasing a gun from the pawn shop. He testified that he had kept the gun in his car and suggested that Wright had obtained it on an occasion when he had borrowed the car.

1. The evidence presented at trial is sufficient to support Williams's conviction for armed robbery under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See OCGA § 16-8-41 (a) ("[a] person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon"); see also OCGA § 16-2-20 (a) ("[e]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime"). And because the evidence meets the *Jackson v. Virginia* standard, the trial court did not err in denying Williams's motion for directed verdict. See *Hester v. State*, 282 Ga. 239, 240 (2) (647 SE2d 60) (2007) (standard of review for denial of motion for directed verdict is same as for determining sufficiency of evidence supporting conviction).

2. Williams contends that the trial court "erred in allowing testimony that a bullet found at the scene of one of the similar transaction cases was a match for the 9 millimeter gun found in Williams'[s] car," on the ground that this testimony was hearsay. He does not, however, provide any citation to the place in the record where this allegedly objectionable testimony occurred. It is not the appellate court's job to cull the record on behalf of a party to find error. *Watson v. State*, 289 Ga. 39, 46 (12) (d) (709 SE2d 2) (2011). Consequently, this contention is without merit. Id.

3. Williams argues that the trial court should have suppressed the inculpatory statement he made at the sheriff's office because it was not made freely and voluntarily. In ruling on the statement's admissibility, the trial court was required to determine whether, based on the totality of the circumstances, a preponderance of the evidence demonstrated that the statement was made freely and voluntarily. *Pineda v. State*, 287 Ga. App. 200, 201 (1) (651 SE2d 148) (2007). We will uphold the trial court's factual findings and credibility determinations regarding the statement's admissibility unless clearly erroneous. *Nguyen v. State*, 273 Ga. 389, 395 (2) (b) (543 SE2d 5) (2001). "Generally, if there is evidence supporting the trial court's decision to admit statements, it will be upheld on appeal." (Citation omitted.) *Milinavicius v. State*, 290 Ga. 374, 375 (2) (721 SE2d 843) (2012).

Williams argues that his statement was involuntary because it was induced by both hope of benefit and fear of injury. See OCGA §

24-3-50 (an admissible confession must have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury); see also *Wilson v. State*, 285 Ga. 224, 227 (3) (675 SE2d 11) (2009). Williams received *Miranda* warnings at the beginning of the interview, before making the statement, and he acknowledged those warnings again partway through the interview. At the hearing on his motion to suppress, Williams testified that he made the statement because the interrogating officers told him that if he told the truth they would let him go. He also testified that the officers raised their voices at him and that one officer hit his hand on the table, stood up and told him he was lying. Williams testified that he got "scared up and confused," and he decided that if he said yes to the officers' questions they might release him. The investigator denied having promised Williams lenient treatment if he cooperated with them, and the video recording of the interview does not support Williams's contention that he received hope of benefit. See *Wilson*, 285 Ga. at 228 (3) ("hope of benefit" generally is construed as hope of lesser punishment but does not extend to an officer's statement of opinion about how others might view a defendant's cooperation and truthfulness or lack thereof). The video recording also does not support Williams's contention that the officers' conduct during the interview caused fear of injury rendering his statement involuntary. See id. (the "fear of injury" referred to in OCGA § 24-3-50 is physical or mental torture).

The trial court ruled that Williams's statement was not the result of "coercion, undue promises, or threats," and that it was admissible. Based on the totality of the circumstances, this decision was not clearly erroneous. See *Milinavicius*, 290 Ga. at 375 (2).

4. Williams argues that the officers had no basis to stop his car and detain him and thus the trial court should have suppressed as fruits of the illegal stop the gun found during the search of his car, other evidence of his ownership of the gun (including statements that he made during the stop), evidence found in Wright's hotel room, and the inculpatory statement he made at the sheriff's office. See *Dupree v. State*, 247 Ga. 470, 472 (2) (277 SE2d 18) (1981) (even if statement is otherwise admissible as freely and voluntarily given under the Fifth Amendment, it may still be inadmissible as the fruit of a Fourth Amendment violation).

On reviewing a trial court's ruling on a motion to suppress, evidence is construed most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility should not be disturbed if there is any evidence to support them. *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994). But "where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application

of the law to undisputed facts is subject to de novo appellate review." (Citations omitted.) *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

(a) As an initial matter, Williams has not preserved for appellate review his objection to the admission of the gun, because at trial his counsel affirmatively stated that he had no objection to its admission. "In so doing, counsel waived any objection, including those raised in his motion to suppress." (Citation omitted.) *Monroe v. State*, 272 Ga. 201, 204 (6) (528 SE2d 504) (2000); see also *Dyer v. State*, 233 Ga. App. 770, 771 (505 SE2d 71) (1998) ("*[f]ailing* to object at trial is not a waiver of the motion to suppress grounds, but *affirmatively stating* there is no objection in effect concedes the point") (citations omitted; emphasis in original).

(b) In reviewing the trial court's denial of the motion to suppress as to the remaining evidence challenged by Williams, we must consider whether the state met its burden of proving that Williams was not stopped illegally. See *State v. Massa*, 273 Ga. App. 596, 597 (615 SE2d 652) (2005) (state bears the burden of showing circumstances constituting an exception to the general prohibition against warrantless searches and seizures).

> Although an officer may conduct a brief investigative stop of a vehicle, such a stop must be justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. The totality of the circumstances is taken into account in determining whether the detaining officer has a particularized and objective basis for suspecting the person stopped of criminal conduct. The legality of the stop depends upon what information police officers had prior to making the stop.

(Citations and punctuation omitted.) *Kazeem v. State*, 241 Ga. App. 175, 177 (1) (525 SE2d 437) (1999).

The trial court found that the stop of Williams's car was supported by reasonable articulable suspicion. But the sheriff's deputy who made the stop did not testify at either the hearing on the motion to suppress or trial. See generally *White v. State*, 263 Ga. 94, 98 (5) (428 SE2d 789) (1993) (suppression hearing transcript and trial transcript may be considered on review of suppression ruling). Without his testimony, we do not know what information he had before making the stop or whether he had an objective and particularized basis for stopping Williams. *Kazeem*, 241 Ga. App. at 178 (1). Testimony from the investigator that he issued a "be on the lookout" for the car containing Wright is not enough to satisfy the state's

burden, because there is no evidence that the deputy who actually stopped Williams received that information. Id. In fact, the investigator's trial testimony suggested that the stop might have occurred prior to the "be on the lookout": "I . . . basically put out some information for our officers to be looking for this vehicle as it was just seen in Blakely. A short time *before* I received the information a deputy with the Sheriff's Office found the vehicle, *conducted a traffic stop*." (Emphasis supplied.) Simply put, the record is silent on whether the deputy stopped Williams's car in response to the "be on the lookout" or for some other, unidentified reason. Given the absence of competent evidence on this point, we are constrained to find that the state did not meet its burden of showing the stop was legal, and we must view the stop as unconstitutional. *Kazeem*, 241 Ga. App. at 178 (1).

(c) Consequently, in ruling on the motion to suppress, the trial court was required to determine whether the challenged evidence was the product of the illegal stop or was sufficiently distinguishable so as to be purged of the taint from the initial illegality, see *State v. Brown*, 269 Ga. App. 875, 877 (605 SE2d 628) (2004), or whether it was subject to the inevitable discovery exception to the exclusionary rule. See *Taylor v. State*, 274 Ga. 269, 274 (3) (553 SE2d 598) (2001). ("[u]nder the inevitable discovery doctrine, if the [s]tate can prove by a preponderance of the evidence that evidence derived from police error or illegality would have been ultimately or inevitably discovered by lawful means, then the evidence is not suppressed as fruit of the poisonous tree" (citation omitted)). The evidence on these points — testimony from Williams and various law enforcement officers and video recordings of the stop and the subsequent interviews of Williams and Wright at the sheriff's office — gives rise to factual questions and issues of credibility that we believe, from our review of the record, would be more properly decided by the trial court in this case. See *Brown*, 269 Ga. App. at 877 (finding it was for the trial court, rather than this Court, to judge the credibility of the witnesses and the weight of the evidence in determining the application of the exclusionary rule). But see generally *Spence v. State*, 281 Ga. 697, 700 (3), n. 11 (642 SE2d 856) (2007) (recognizing that under some circumstances appellate court may conduct exclusionary rule analysis even if trial court did not do so, if record is of amply sufficient detail and depth to allow appellate court to make that determination).

Accordingly, we vacate in part the order denying the motion to suppress and remand this case to the trial court for further findings of fact and conclusions of law pertaining to the application of the exclusionary rule in this case. See *Brown*, supra. See generally *Agnew v. State*, 298 Ga. App. 290, 292-293 (3) (680 SE2d 141) (2009).

5. Given our remand of this case for further proceedings on Williams's motion to suppress, we do not reach his claims that he received ineffective assistance of trial counsel.

*Judgment affirmed in part and vacated in part, and case remanded with direction. Phipps, P. J., and Andrews, J., concur.*

### ON MOTION FOR RECONSIDERATION.

In a motion for reconsideration of our decision, Williams, among other things, expresses a concern that our ruling in Division 1 "create[s] a law of the case principle that makes the whole exercise of remand pointless." Certainly, if on remand the trial court determines that the evidence challenged by Williams properly was admitted at trial, then our ruling that "[t]he evidence *presented at trial* is sufficient to support Williams's conviction" (emphasis supplied) will be dispositive of any further claims of insufficiency regarding that evidence. OCGA § 9-11-60 (h). But if on remand the trial court determines that some of that evidence should have been suppressed as the product of the illegal stop, and if the court determines that the failure to suppress that evidence necessitates a new trial in which the evidence is not admitted, then our ruling as to the sufficiency of the evidence presented at the first trial will have no relevance to the question of the sufficiency of different evidence presented at the new trial. See generally *Bruce v. Garges*, 259 Ga. 268, 270 (2) (379 SE2d 783) (1989) (law of the case rule applies where "the same parties and issues are involved and the evidentiary posture of the case remains the same") (citation omitted). Instead, in such case, our sufficiency ruling in Division 1 will be relevant only to the issue of whether Williams may be retried. See *Lively v. State*, 262 Ga. 510, 512 (3) (421 SE2d 528) (1992).

Williams also expresses a concern that, on remand, the state might attempt to introduce new evidence in opposition to his motion to suppress, which he asserts would run afoul of principles of double jeopardy and collateral estoppel. But see *Atkins v. State*, 254 Ga. 641, 642 (331 SE2d 597) (1985) (remanding case to trial court for further proceedings on motion to suppress). Should anything occur on remand to implicate principles of double jeopardy or collateral estoppel, Williams's arguments would be more properly addressed to the trial court at that time.

*Motion for reconsideration denied.*

DECIDED FEBRUARY 23, 2012 —
RECONSIDERATION DENIED MARCH 16, 2012 —

*John G. Wolinski*, for appellant.

*Joseph K. Mulholland, District Attorney, Michael L. Bankston, Assistant District Attorney*, for appellee.