**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**November 6, 2012**

# In the Court of Appeals of Georgia

A12A0807. TALIFERO v. THE STATE.

BOGGS, Judge.

A jury found Kendrick Talifero guilty on three counts of aggravated assault and three counts of possession of a firearm during the commission of a crime.[1] Talifero appeals, challenging the sufficiency of the evidence, the trial court's ruling on the admission of a similar transaction, and the denial of his motion for mistrial. We hold that the trial court erred in allowing the similar transaction and therefore reverse Talifero's convictions. Because the evidence was otherwise sufficient, the State is authorized to retry him.

---

[1]Talifero was acquitted on a charge of possession of marijuana with intent to distribute.

1. In two enumerations, Talifero contends that the evidence was insufficient to sustain his convictions. On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and the defendant no longer enjoys the presumption of innocence. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). We do not weigh the evidence nor determine witness credibility, but determine only whether the evidence was sufficient for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

So construed, the evidence showed that in early 2007, two men telephoned John Chisholm to purchase $25 worth of marijuana When Chisholm arrived at a gas station to make the sale, the men "basically just ripped [Chisholm] off and drove off with the marijuana." A few weeks later, the two men were at a gas station pump when Chisholm pulled up to the other side of the pump with Talifero in the front passenger's seat. When Chisholm confronted the men about taking the marijuana without paying, the men apologized to Chisholm. There were "no harsh words or loud words" during the conversation and Chisholm made no threats.

At some point, Talifero and Chisholm switched seats, and when the men left, Talifero and Chisholm followed them. When the two men, along with another

companion, parked in front of a friend's home, Talifero and Chisholm stopped behind them. Chisholm yelled "you owe me money . . . give me 25 bucks." One of the men told Chisholm, "I can pay you when I get paid," and Chisholm replied "You're going to pay me double what you owe me . . . or triple." After more "words were exchanged" between the men and Chisholm, Talifero told Chisholm "you better not let these guys get away, go ahead and handle your business, do what you got to do, man." Chisholm then pulled out a gun, reached over Talifero, leaned out of the driver's-side window, and began shooting at the men, hitting one of them in the cheek. Talifero and Chisholm then drove away.

Police officers received a dispatch call advising them that "[a] person [was] shot," and providing them a description of Chisholm's vehicle. Officers located Talifero and Chisholm and followed them, noticing that they "passed another vehicle on a double yellow line . . . seemed like they were attempting to get away . . . attempt to elude police." Talifero and Chisholm finally stopped and were taken into custody. Inside the console and the glove compartment of the vehicle, officers found a total of five bags of marijuana. After Chisholm told the officers where to look for the gun, officers located it "off the passenger side of the roadway" where they first spotted the vehicle.

3

Chisholm, who was charged in the same indictment, pled guilty just before the start of Talifero's trial and testified as a witness for the State. He identified the gun found on the side of the road as his gun, and admitted that he "leaned and reached over" Talifero to fire his gun, but claimed that he pointed it down and did not intend "for any of the bullets to hit anybody. I meant to scare him off." Chisholm stated further that he told Talifero to follow the men from the gas station and told him "let's take off, get out of here" after he fired the shots. He admitted to having marijuana stored in his glove compartment but stated that Talifero "had no idea it was in there," and claimed that Talifero had nothing to do with the shooting.

Talifero argues that he did not directly participate in the crimes or encourage or abet Chisholm in the commission of the crimes. OCGA § 16-2-20 provides that a person is a party to a crime if he directly commits the crime, intentionally causes some other person to commit the crime, intentionally aids or abets in the commission of the crime, or "[i]ntentionally advises, encourages, hires, counsels, or procures another to commit the crime." And "[w]hile mere presence at the scene and approval of a crime not amounting to encouragement is insufficient to authorize [a] conviction as a party to a crime under OCGA § 16-2-20 (4), criminal intent may be inferred from

4

conduct before, during, and after the commission of the crime." (Citations and punctuation omitted.) *Simpson v. State*, 265 Ga. 665, 665-666 (461 SE2d 210) (1995).

Based on the evidence that Talifero drove and deliberately followed the men and pulled in behind their vehicle, intentionally encouraged Chisholm by telling him "you better not let these guys get away, go ahead and handle your business, do what you got to do," and that he fled with Chisholm after the shooting, the jury was authorized to conclude that he was a party to the crimes of aggravated assault and possession of a firearm during the commission of a crime. See *Parks v. State*, 272 Ga. 353, 354-355 (529 SE2d 127) (2000); *Simpson*, supra, 265 Ga. at 665-666; see also *Clark v. State*, 311 Ga. App. 58, 61 (714 SE2d 736) (2011) (where party committed aggravated assault and possession of a firearm during commission of felony, accomplice concerned in commission of those crimes under OCGA § 16-2-20 is likewise guilty of both crimes); *Johnson v. State*, 299 Ga. App. 706, 710 (1) (d) (683 SE2d 659) (2009) (same).

2. Talifero argues that the trial court erred in admitting evidence surrounding his 2005 arrest and subsequent guilty plea to possession of marijuana and carrying a concealed weapon.

"In order to protect an accused and to insure him of a fair and impartial trial before an unbiased jury, we have long embraced the fundamental principle that the general character of an accused is inadmissible unless the accused chooses to put his character in issue." (Citation omitted.) *Williams v. State*, 261 Ga. 640, 641 (2) (a) (409 SE2d 649) (1991). And

> [a]s a corollary of this fundamental principle, we have also long adhered to the rule that where an accused is on trial for the commission of a crime[,] proof of a distinct, independent, and separate offense is never admissible, unless there is some logical connection between the two, from which it can be said that proof of the one tends to establish the other. The rationale for the latter rule is that evidence of an independent offense or act committed by the accused is highly and inherently prejudicial, raising, as it does, an inference that an accused who acted in a certain manner on one occasion is likely to have acted in the same or in a similar manner on another occasion and thereby putting the accused's character in issue.

(Citation and punctuation omitted.) Id. The State must show that (1) it seeks to introduce evidence of the independent offense or act, not to raise an improper inference on the accused's character, but for some appropriate purpose that is an exception to the general rule of inadmissibility; (2) that there is sufficient evidence to establish that the accused committed the independent offense, and (3) that there is

6

a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter. *McMullen v. State*, ___ Ga. App. ___ (2) (730 SE2d 151) (2012).

> And depending upon the reason for which the independent crime is offered, the State may be required to prove a high degree of similarity between relevant characteristics of the extrinsic offenses and the charged crimes, or it may only have the burden of showing a logical connection between crimes which are essentially dissimilar.

(Citations, punctuation and footnotes omitted.) Id. When we review the trial court's findings as to whether the State satisfied these three prongs, we apply the clearly erroneous standard, and the "decision to admit similar transaction evidence which satisfies the three-prong test is within the trial court's discretion and will not be disturbed absent an abuse of that discretion." (Citation omitted.) *Flowers v. State*, 269 Ga. App. 443, 444 (1) (604 SE2d 285) (2004).

The similar transaction witness, Officer Dahlquist, testified that on December 12, 2005, he made a traffic stop of a vehicle in which Talifero was a front seat passenger. The officer smelled the odor of "green or non-burned marijuana" as he asked for Talifero's identification. After the officer placed the driver under arrest for two bags of marijuana found on his person while being frisked, he approached

7

Talifero who was still sitting in the vehicle. Talifero admitted to the officer that he had a gun which was concealed under his left leg. He was then taken into custody and officers found $845 on his person and a bag of marijuana in his shoe. Officers also found additional marijuana in the vehicle. Talifero was charged with possession of marijuana with intent to distribute, carrying a concealed weapon, possession of a firearm during the commission of a crime, and failure to use a safety belt, but pled guilty to carrying a concealed weapon and the lesser-included offense of possession of marijuana.

Talifero argues that there is no similarity between the 2005 incident and the crimes charged here.[2] He contends that the present case involves a "crime of

[2]The State argues that Talifero waived this issue. Prior to the officer's testimony, the State tendered Talifero's guilty plea to possession of marijuana and carrying a concealed weapon, arising out of his 2005 arrest. When the Stated tendered Talifero's plea, trial counsel, without question from the trial court, stated: "I don't have an objection to that." Therefore, to the extent Talifero complains of the admission of his plea, he affirmatively waived any objection. See *Lightsey v. State*, 316 Ga. App. 573, 574 (730 SE2d 67) (2012) ("We have no rule in this state which prohibits counsel from affirmatively waiving or withdrawing an objection previously made.[Cits.]"); *Williams v. State*, 314 Ga. App. 840, 844 (4) (a) (726 SE2d 66) (2012) (same). Moreover, Talifero's counsel tendered the sentencing sheet on the plea to demonstrate that Talifero pled guilty to misdemeanors and was not a convicted felon as a result of the plea. But although Talifero waived any objection to the admission of his plea, he did not waive any objection to the officer's testimony concerning the prior act and was not required to object to preserve his claim that the evidence should have been excluded. See *Whitehead v. State*, 287 Ga. 242, 248-249 (2) (695 SE2d

violence" and that the 2005 incident involved "no violence and no shooting." The trial court ruled that the similar transaction could be considered to show course of conduct, modus operandi, and state of mind, and at trial instructed the jury accordingly.[3]

The State argues that the prior conviction was submitted "as similar to marijuana and weapon possession charges" to show Talifero's state of mind, course of conduct, and modus operandi. The similarity between a prior charge or guilty plea resulting in a conviction and current charges against a defendant cannot alone satisfy the requirements for the admission of similar transaction evidence.[4] Indeed, the

---

255) (2010) (abandoning repetitive objection rule for similar transaction evidence; just as in the case of motions in limine and motions to suppress where a pretrial ruling from the court has been obtained, objection does not have to be repeated at trial).

[3]We note that the new evidence code eliminates the "bent of mind" and "course of conduct" exceptions to similar transaction evidence. See OCGA § 24-4-404 (b), effective January 1, 2013.

[4]And in any case, the weapon possession charge here was possession of a firearm during the commission of a crime, as opposed the prior act which involved carrying a concealed weapon. We fail to see how the prior act would be admissible as to only the "marijuana and weapon possession charges" when the three counts of possession of a firearm during the commission of a crime were premised upon the commission of three counts of aggravated assault.

9

State's introduction of a copy of the prior conviction alone is insufficient. *Williams v. State*, 261 Ga. 640, 642 (2) (c) (409 SE2d 649) (1991).

> The [S]tate must do more than merely introduce a certified copy of a conviction and/or indictment into evidence. The state must present the trier of fact with evidence establishing both that the accused committed an independent offense or act and that the connection and/or similarity between that offense or act and the crime charged is such that proof that the accused committed the former tends to prove that the accused also committed the latter.

(Citation omitted.) Id. While the copy of a previous conviction may be enough to establish that a defendant committed the independent offense, it does not establish similarity or connection. Id. at 643 (2) (d). We must look to the evidence presented by the State concerning the prior act, especially here where the trial court admitted the prior act for the purposes of showing state of mind, modus operandi, and course of conduct. See, e. g., *Carver v. State*, 248 Ga. App. 718, 719 (2) (548 SE2d 629) (2001) (circumstances surrounding prior and current drug possession offenses so similar that court did not err in admitting prior crime to show identity, intent, motive, modus operandi, plan, scheme and course of conduct; in both prior and current drug convictions, defendant was in his home with his wife and a third person when a gun, drugs, drug residue, a spoon, and other drug paraphernalia were found in defendant's

master bedroom); *Okongwu v. State*, 220 Ga. App. 59, 63-64 (4) (467 SE2d 368) (1996) (prior incident relevant to show bent of mind and common scheme where in each incident defendant concealed or fled and discarded amount of cocaine consistent with distribution).

The only similarity in each transaction here is that in each instance Talifero was in a vehicle in which marijuana and a gun were present. The evidence concerning the concealment of a gun in the prior act has no similarity to the crimes here. "And although similarity is not 'the only factor, nor is it necessarily the controlling factor' that governs admissibility, the ultimate issue is whether the evidence of other crimes has 'relevance to the issues in the trial of the case.'" (Citation, punctuation and footnote omitted.) *McMullen*, supra.

The prior act of concealing a weapon not only has no significant similarity to being a party to the crimes of aggravated assault and possession of a firearm during the commission of a felony by encouraging another person to act, it has no relevance to those crimes. In the present case, Talifero encouraged Chisholm to "go ahead and handle your business, do what you got to do, man," after which Chisholm shot at the men. In the prior act, Talifero admitted to police during a traffic stop that he was carrying his own concealed weapon as a passenger in the vehicle in the company of

11

another individual; there was no confrontation and no assault. There is simply no logical connection between the two crimes. See id. And although the State argues that the prior act did not raise an improper inference as to Talifero's character, we find that it "is exactly the type of inadmissible character evidence that the safeguards . . . are designed to protect against." (Citations, punctuation and footnote omitted.) Id.

While there is sufficient evidence to establish that Talifero committed the independent act, there is insufficient "connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter." See id. (prior act of ingesting methamphetamine that resulted in conviction for possession with intent to distribute not relevant to whether defendant was under the influence of combination of drugs to the extent it rendered her a less-safe driver); *King v. State*, 230 Ga. App. 301, 303-304 (1) (496 SE2d 312) (1998) (prior acts of selling drugs to an undercover office not significantly similar to charge of possession of methamphetamine in bodily fluid); compare *Cochran v. State*, 276 Ga. 283, 286 (4) (576 SE2d 867) (2003) (prior act of pulling a gun on victim after victim made a joke about defendant was sufficiently similar to evidence that he pulled a gun on another person after the person embarrassed him). Based upon the particular

12

facts of this case, the trial court abused its discretion in ruling that this evidence was admissible. See *McMullen*, supra.

Having found error in the admission of the similar transaction, we must now consider whether the error was harmless. The evidence supporting Talifero's aggravated assault convictions as a party to the crime was not overwhelming. While Talifero's flight from the crime scene and the pursuing officers provided circumstantial evidence of his guilty intent, see *Boggs v. State*, 304 Ga. App. 698, 701 (1) (697 SE2d 843) (2010), only one of the three aggravated assault victims testified that he heard Talifero tell Chisholm: "you better not let these guys get away, go ahead and handle your business, do what you got to do."[5] When asked specifically about Talifero's involvement, one of the other two victims testified that he "didn't hear [Talifero] say anything." The third victim acknowledged that Talifero "never provided any encouragement," and stated that Talifero "didn't say nothing." Given that evidence of the prior crimes is "highly and inherently prejudicial," see *McMullen*,

_____

[5]This witness made no such statement concerning Talifero in his written statements to police.

13

supra, and the evidence in this case is not overwhelming, we must reverse Talifero's convictions.[6] See *McMullen*, supra.

3. Talifero's remaining enumeration is unlikely to recur upon a retrial and is rendered moot by our holding in Division 2 reversing his convictions.

*Judgment reversed. Doyle, P.J., concurs. Andrews, J., concurs in the judgment only.*

---

[6]While the evidence in this case is not overwhelming, it is sufficient to sustain Talifero's convictions and the State is authorized to retry him without violating the constitutional bar against double jeopardy. See *McMullen*, supra; see also *Nance v. State*, 274 Ga. 311, 311-312 (553 SE2d 794) (2001) (retrial is not barred where reversal of conviction results from trial error rather than evidence sufficiency).