**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RICKMAN and MARKLE, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 5, 2019**

# In the Court of Appeals of Georgia

A18A1697. BLACK v. THE STATE.

RICKMAN, Judge.

After a jury trial, David Black was convicted of aggravated sexual battery and child molestation. He appeals, claiming that the trial court abused its discretion by failing to require retained counsel to properly withdraw from the case and forcing Black to trial with unprepared counsel. Black argues that the trial court's actions violated his Sixth Amendment right to effective assistance of counsel and to competent counsel of his choice. We agree and reverse.

The record shows that a month and a day after his privately-retained attorney appeared without reservation "as counsel for Defendant in the above-captioned matter," and only two months after being indicted for a crime bearing a possible life sentence, Black appeared at a Monday trial calendar call without counsel, and without

notice that on the previous Thursday his retained counsel had filed an untimely[1] motion to withdraw. After Black notified the assigned judge that retained counsel had just told him in the hall that he would not be representing Black at trial, and without the court addressing retained counsel's motion to withdraw or considering its merits, the assigned judge told Black that he should hire counsel or be prepared to conduct the trial pro se the following Monday. The judge also gave Black "a very stern lecture about showing up to calendar call without a lawyer."[2]

Later that day Black obtained appointed counsel, who on the same day notified the court that he would be representing Black. When he did so, the same judge, who appeared still to be angry at Black, instructed appointed counsel that no request for a continuance would be granted and the case would be tried the following Monday.

---

[1] See Uniform Superior Court Rule 4.3 (1) ("An attorney ... who wishes to withdraw as counsel for any party[ ] shall submit a written request to an appropriate judge of the court for an order permitting such withdrawal. The request shall state that the attorney has given written notice to the affected client setting forth the attorney's intent to withdraw, that 10 days have expired since notice, and there has been no objection, or that withdrawal is with the client's consent."), 4.3 (2) ("[t]he attorney seeking withdrawal shall provide a copy to the client by the most expedient means available due to the strict 10-day time restraint, i.e., e-mail, hand delivery, or overnight mail").

[2] The information before this Court regarding what occurred at the calendar call comes from undisputed testimony by Black's appointed counsel at the hearing on Black's motion for new trial.

One week later, despite trying two felony cases in the interim, appointed counsel stood in court and announced ready to defend Black from the serious charges facing him. One day after that, Black was found guilty, taken into custody, and eventually sentenced to life (to serve 25 years) on one of the two charges against him.

Adding to the discontinuity in this case, the assigned judge presided at the calendar call and at sentencing, and a substitute judge presided at trial and at the hearing on the motion for new trial, which motion that judge denied. In his order, the substitute judge even noted that "[t]o date, retained counsel has still not been officially ordered withdrawn from the case." Nevertheless, despite *not presiding at the calendar call* where Black appeared without counsel and where the assigned judge neither considered nor ruled upon the motion to withdraw, the substitute judge found that Black was at fault for "failing to maintain contact with retained counsel" and that Black himself "deprived [appointed counsel] of time . . . to prepare [Black's] case." The judge added, "[Black] is the author of the condition in which he finds himself. He will not now be heard to complain."

At Black's jury trial the state presented three witnesses—the victim, the victim's forensic interviewer, and a police investigator who observed the forensic

interview—and introduced a video recording of the forensic interview. The defense called the victim's mother as its sole witness.

Viewed in favor of the verdict, the evidence showed that Black lived with the victim's mother. The victim lived with her maternal great grandmother, but would often stay with her mother and Black. On July 29, 2016, when the victim was 12 years old, she accompanied her mother to a fast food restaurant where she told her mother that Black had raped her. That same day, the victim sent text messages to her father stating "David's going to prison soon yayyyy," because he had raped her. The father reported the allegations to the police, who arranged a forensic interview of the victim. During that interview, the victim stated that Black had been touching her inappropriately for a couple of years and had inserted something into her vagina. At trial, the victim testified that Black had touched her breasts and vagina, but that he had not inserted anything into her vagina.

Black moved for a directed verdict on the aggravated sexual battery count based on the victim's testimony that nothing had been inserted into her vagina. The State responded that during the recorded forensic interview, the victim stated that Black had penetrated her vagina with his finger. The court denied the motion, finding that the evidence presented a question of fact for the jury.

The jury found Black guilty of both counts—aggravated sexual battery and child molestation. The trial court imposed a life sentence, with 25 years in confinement and the remainder on probation, for the aggravated sexual battery, and imposed a concurrent 20-year sentence for the child molestation. Black filed a motion for new trial, which, following a hearing, the trial court denied. Black appeals.

1. We agree with Black that the trial court abused its discretion at the trial calendar call when it impliedly granted Black's retained counsel's motion to withdraw without consideration of the merits of the motion and, later that day, by sua sponte refusing to consider any motion for a continuance by appointed counsel.

(a) Retained counsel filed the motion to withdraw on the Thursday before the Monday trial calendar call, and the motion included an affidavit signed by retained counsel. In addition to being untimely as shown above, the motion was flawed in several ways. First, the certificate of service states that retained counsel "[did] not have a proper mailing address to notify [Black]," and there is no evidence that Black received notice of the motion before he appeared at the calendar call. Second, the motion to withdraw did not comply with the Uniform Rule of Superior Court 4.3 (1) in that it did not "state that the attorney has given written notice to the affected client setting forth the attorney's intent to withdraw, that 10 days have expired since notice,

5

and there has been no objection, or that withdrawal is with the client's consent." Third, the motion and the attached affidavit were internally inconsistent: the motion stated that counsel should be allowed to withdraw because he had been "retained for bond purposes only and filed as counsel in this matter in error," yet the record shows that retained counsel represented Black for one month and that he had waived arraignment, demanded a list of witnesses, and elected to engage in reciprocal discovery on behalf of Black.[3] The affidavit further differed from the motion in that it stated that withdrawal should be permitted because Black failed to maintain contact and failed to provide fees for continued representation. In addition, the motion stated that Black would not be prejudiced by retained counsel's withdrawal because "the state has no objection to withdrawal and a continuance from this trial calendar to allow defendant to obtain new counsel."

Rather than attempt to resolve the untimely nature of the motion, the obvious discrepancies it contained, and the potential prejudice it posed to Black, the assigned judge simply instructed Black that his trial would occur the following week and that

---

[3] Rule 1.2 of the Georgia Rules of Professional Conduct allows a lawyer to "limit the scope and objectives of the representation." See State Bar Rules and Regulations, Rule 4-102. We know of no Georgia law, however, holding that such a limitation limits a criminal court's authority over whether a lawyer may withdraw from representation during the course of a criminal matter.

he had to either obtain different counsel or be prepared to proceed pro se. In so doing, the judge failed to properly exercise her discretion—or indeed, exercise any discretion—with respect to retained counsel's motion to withdraw.

Although a trial court's decision to grant or deny a motion to withdraw is entrusted to a court's discretion, see *Miller v. Lomax*, 333 Ga. App. 402, 406 (3) (a) (773 SE2d 475) (2015), a court abuses its discretion by wholly failing to exercise that discretion. See generally *Brown v. State*, 133 Ga. App. 56, 60 (6) (209 SE2d 721) (1974) ("[W]hen a judge passes on a matter, in which he has a discretion, and fails and refuses to exercise that discretion (especially where the judge lets it be known that he believes he has no discretion) the judgment thus reached is erroneous and should be set aside."). By wholly failing to exercise discretion by neglecting to consider and address the motion for withdrawal, the trial court erred.[4]

The court also erred because under well-established Georgia law, "[a] formal withdrawal of counsel cannot be accomplished until after the trial court issues an

---

[4] The assigned judge's error was compounded when, despite acknowledging in its order denying Black's motion for new trial that retained counsel had never been formally withdrawn, the substitute judge blamed Black for appearing without counsel at the calendar call by concluding that Black failed to maintain contact with his retained counsel. There was never a hearing on the matter or consideration of the merits, and the substitute judge was not on the bench for the calendar call.

order permitting the withdrawal. Until such an order properly is made and entered, no formal withdrawal can occur and counsel remains counsel of record." (Citation and punctuation omitted.) *Tolbert v. Toole*, 296 Ga. 357, 362 (3) (767 SE2d 24) (2014); see generally *White v. State*, 302 Ga. 315, 319 (2) (806 SE2d 489) (2017) ("[L]egal representation continues—unless interrupted by entry of an order allowing counsel to withdraw or compliance with the requirements for substitution of counsel, see USCR 4.3 (1)-(3)—through the end of the term at which a trial court enters a judgment of conviction and sentence on a guilty plea."). Yet, here, as acknowledged in the order denying Black's motion for new trial, "[t]o date, retained counsel has still not been officially ordered withdrawn from the case." Nevertheless, Black was forced to go to trial—on criminal charges that potentially (and actually) carried a life sentence—with alternative counsel after receiving legally insufficient notice and none of the requisite inquiry into whether retained counsel should have been permitted to withdraw.

(b) The assigned judge also failed to exercise her discretion regarding the possible need for a continuance by instructing appointed counsel that no continuance would be granted. "[A] myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty

formality." (Citations omitted.) *Ungar v. Sarafite*, 376 U.S. 575, 589 (IV) (84 SCt 841, 11 LE2d 921) (1964); see *Smith v. Greek*, 226 Ga. 312, 317 (175 SE2d 1) (1970) ("Undue haste in the administration of the criminal law is as much to be condemned as unnecessary delay. The true course lies between these extremes.") (citation and punctuation omitted). In short, a court should not impede the request for a continuance; rather, "the trial judge, in the exercise of his discretion to grant or refuse a continuance, has to consider the facts and circumstances of each case to determine what the ends of justice require." *Hill v. State*, 161 Ga. App. 346 (1) (287 SE2d 779) (1982). By refusing to consider a continuance, the assigned judge wholly failed to consider the factors that could justify delaying the trial, and failed to take into account whether prejudice would result to Black, including that retained counsel asserted in the motion for withdrawal that "the state has no objection to withdrawal and a continuance from this trial calendar to allow defendant to obtain new counsel." Accordingly, the assigned judge again abused her discretion.

2. The above-described abuses of discretion resulted in a structural error—deprivation of Black's counsel of choice—that requires reversal and, under the circumstances, a new trial.

"[T]he Sixth Amendment right to counsel of choice . . . commands, not that a trial be fair, but that a particular guarantee of fairness be provided—to wit, that the accused be defended by the counsel he believes to be best." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 146 (II) (126 SCt 2557, 165 LE2d 409) (2006). When that right is violated "[n]o additional showing of prejudice is required to make the violation 'complete' . . . [and] it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation." Id. at 146-148 (II). Further, the erroneous deprivation of the right to counsel of choice is a structural defect for which harmless error analysis is inapplicable. Id. at 150 (III).

Black had a right to counsel of choice even though he ultimately obtained appointed counsel. "A defendant exercises the right to counsel of choice when he moves to dismiss retained counsel, regardless of the type of counsel he wishes to engage afterward[, i.e., regardless whether he thereafter engages appointed counsel]." *United States v. Jimenez-Antunez*, 820 F3d 1267, 1271 (III) (11th Cir. 2016). It follows that a defendant also exercises the right to counsel of choice by opposing retained counsel's improper attempted withdrawal, even if he thereafter is forced to obtain appointed counsel. Thus, under the circumstances, the fact that Black

10

ultimately obtained appointed counsel does not mean that he waived his right to counsel of choice.

Further, although "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them," (citations omitted.) *Gonzalez-Lopez*, 548 U.S. at 152 (IV),[5] there is nothing in the record to show that the assigned judge determined that Black required counsel to be appointed for him or assessed whether Black was diligent in obtaining the services of retained counsel. Rather, obviously peeved at Black, the assigned judge chose to blame him for appearing without counsel, forced him to proceed to trial in one week's time without his retained counsel, and thwarted any possible request for a continuance by newly appointed counsel.

Nor can it be said that Black waived his right to counsel of choice at the calendar call given that he was still represented by retained counsel at the time;

---

[5] See also *Calloway v. State*, 313 Ga. App. 708, 710 (1) (722 SE2d 422) (2012) ("The Georgia Constitution provides that '[e]very person charged with an offense against the laws of this state shall have the privilege and benefit of counsel. . . .' Our Supreme Court has construed this constitutional provision to 'confer upon every person indicted for [a] crime a most valuable and important constitutional right, which entitles him to be defended by counsel of his own selection whenever he is able and willing to employ an attorney and uses *reasonable diligence* to obtain his services.'") (citations omitted, emphasis in original).

rather, Black was abandoned by retained counsel. See Georgia Rule of Professional Conduct ("Rule") 1.3 (a lawyer "shall not without just cause to the detriment of the client in effect wilfully abandon or wilfully disregard a legal matter entrusted to the lawyer"). And given that pro se filings by represented parties are unauthorized and without effect, see *Tolbert*, 296 Ga. at 363 (3), we fail to see how Black, who was still represented at the time of the calendar call, can be said to have waived his right to counsel of his choice by failing to act pro se to object to the court's actions.

Finally, it is true that a trial court has "wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar." (Citations omitted.) *Gonzalez-Lopez*, 548 U.S. at 152 (IV). Nevertheless, "the withdrawal of counsel immediately before trial so as to leave the defendant unprepared for trial is grounds for continuance." *Greek*, 226 Ga. at 317, citing *Jackson v. State*, 88 Ga. 784 (15 SE 677) (1892). That is so because "the constitutional guaranty of benefit of counsel to one charged with an offense against the laws of this State means something more than the mere appointment [of counsel]-such counsel is entitled to a reasonable time to prepare his defense properly." *Smith v. State*, 215 Ga. 362, 365 (1) (110 SE2d 635) (1959); see, e.g., *Spillers v. State*, 145 Ga. App. 809 (1) (245 SE2d 54) (1978) (abuse of the court's

discretion to refuse continuance without giving appointed counsel time to acquaint himself with the case and subpoena medical witnesses).

Here, the assigned judge deprived Black of counsel of his choice by implicitly granting retained counsel's flawed motion for withdrawal and by refusing any request for a continuance, all without exercising any discretion. The assigned judge wholly failed to balance Black's right to counsel of choice against the demands of her calendar, resulting in a structural error that forced Black to trial with ill-prepared appointed counsel. For these reasons, a new trial is required, which is allowed if the evidence presented at the first trial was sufficient to support the verdict. See *Lamar v. State*, 278 Ga. 150, 153 (2) (598 SE2d 488) (2004); *Talifero v. State*, 319 Ga. App. 65 (734 SE2d 61) (2012).

3. On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys a presumption of innocence. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979); *Towry v. State*, 304 Ga. App. 139 (695 SE2d 683) (2010). "We do not weigh the evidence or judge the credibility of the witnesses, but determine only whether the evidence authorized the jury to find the defendant guilty of the crimes beyond a reasonable doubt in accordance with the standard set forth in *Jackson v. Virginia*."

(Citation omitted.) *Wilson v. State*, 318 Ga. App. 37 (733 SE2d 345) (2012). The evidence, recounted above, was sufficient to support the verdict. Accordingly, the State may retry Black.

4. Given our reversal of the convictions on the above grounds, we need not address Black's contentions that appointed counsel was ineffective in multiple regards or that the trial court erred regarding the admission of certain evidence. See *Brown v. State*, 303 Ga. 158, 165 (3) (810 SE2d 145) (2018).

*Judgment reversed. Markle, J., concurs and McFadden, P. J., concurs specially.\**

**\* THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2(a)."**

# In the Court of Appeals of Georgia

A18A1697. BLACK v. THE STATE.

McFADDEN, Presiding Judge, concurring specially.

I share many of the concerns expressed in the majority opinion about how this case was handled below. But we have no authority to reverse on the grounds addressed by the majority because they were not preserved for appellate review.

Nevertheless I concur in the judgment of reversal. Black received ineffective assistance of counsel, and that issue was properly raised and ruled on below.

1. *Motion to withdraw and continuance.*

The majority first finds that the trial court erred at the calendar call when it granted retained counsel's motion to withdraw and that the court later erred in

refusing to consider a continuance. However, neither issue was preserved below and the appellant has not enumerated the refusal of a continuance as error on appeal.

> As an intermediate appellate court, we are a court for the correction of errors which are properly preserved below and which are properly raised in this court. It is not the function of this court to raise and decide issues not complained of by the parties. It follows that our review of this case is limited to those issues properly raised by [the appellant in the trial court and] on appeal to this court.

*Cole v. State*, 211 Ga. App. 236, 237 (438 SE2d 694) (1993) (citations omitted).

(a) *Motion to withdraw.*

As the majority acknowledges, the trial court did not enter an order permitting retained counsel to withdraw. See *Tolbert v. Toole*, 296 Ga. 357, 362 (3) (767 SE2d 24) (2014) (until such an order is entered, no formal withdrawal occurred) In addition, there is no transcript of the calendar call at which the majority claims the trial court "impliedly granted" the motion to withdraw. "Where the transcript or record does not fully disclose what transpired [in the trial court], the burden is on the complaining party to have the record completed in the trial court under the provisions of OCGA § 5-6-41 (f). When this is not done, there is nothing for the appellate court to review." *Duncan v. State*, 342 Ga. App. 530, 537 (4) (804 SE2d 156) (2017) (citation, footnote, and punctuation omitted). Here, Black has not met this burden by

2

completing the record with a statutorily authorized substitute for the missing transcript of the calendar call proceedings, so there is nothing to review with regard to the purported grant of the motion to withdraw at the calendar call.

Moreover, "legal issues must be raised *and ruled on* below in order to be properly considered on appeal[.]" *Kennebrew v. State*, 304 Ga. 406, 408 n. 2 (819 SE2d 37) (2018) (citation omitted; emphasis supplied). Accord *Worthy v. State*, 252 Ga. App. 852, 854 (3) (We will not consider issues "which were not raised *and determined* by the trial court.") (citation and punctuation omitted; emphasis supplied). Here, not only is there no order in the record granting the motion to withdraw, but Black did not raise this issue in his motion for new trial, so the trial court did not rule on it in denying that motion. Because the issue was not raised and ruled on in the trial court, it is not properly before us.

To the extent Black and the majority now claim that the trial court erred in allowing the trial to go forward before entering an order permitting retained counsel to withdraw, such an objection was never raised in the trial court. Rather, Black and his appointed counsel announced ready on the first day of trial, fully participated in the trial, and never objected to the procedure. "A party cannot participate and acquiesce in a trial court's procedure and then complain of it." (Citation and

3

punctuation omitted.) *O'Rourke v. State*, 327 Ga. App. 628, 632-33 (2) (760 SE2d 636) (2014) (citation and punctuation omitted). See also *Compton v. State*, 281 Ga. 45, 46 (2) (635 SE2d 766) (2006) (defendant may not acquiesce in a court's ruling and then complain of same on appeal). Consequently, "this enumeration of error is waived on appeal because appellant acquiesced in the procedure used by the court." *Dunn v. State*, 325 Ga. App. 888, 889 (2) (756 SE2d 17) (2014) (citation and punctuation omitted). See *Hampton v. State*, 272 Ga. App. 565 (612 SE2d 854) (2005) (defendant acquiesced and proceeded with appointed counsel).

(b) *Continuance.*

The majority finds that the trial court erred in instructing appointed counsel that no continuance would be granted. Again, there is no transcript, or statutorily authorized substitute, of the proceeding at which this purported denial of a continuance occurred. See OCGA § 5-6-41 (f); *Duncan*, supra. And again, Black did not raise this issue of a purported denial of a continuance in his motion for new trial, so it was not ruled on by the court below. Moreover, he has not enumerated it as error on appeal. As noted above, it is not the function of this court to raise and decide issues not complained of by the parties, and instead our review is limited to those claims properly raised by the appellant in the trial court and on appeal. *Cole*, supra.

4

2. *Denial of right to counsel of choice.*

The majority also finds that Black was denied his right to the counsel of his choice. But the majority has not cited any part of the record where Black raised this issue and it was rejected by the trial court, either during the trial or in his motion for new trial. On the contrary, the record shows that Black and his appointed counsel announced ready on the first day of trial and never claimed that Black was being denied his right to counsel of choice. We thus have no authority to reverse on that ground since "the record reveals that [Black] did not preserve this issue regarding his choice of counsel for appellate review by raising it in the trial court." *Carman v. State*, 304 Ga. 21, 34 (3) (815 SE2d 860) (2018) (citation omitted).

3. *Ineffective assistance of counsel.*

Black's claim of ineffective assistance of counsel was properly raised and ruled on below and was thus preserved for appellate review. Black claims that his trial counsel was ineffective in failing to introduce evidence that would have supported the defense theory that A. W. fabricated the accusation against him. To prevail on this claim, Black "must show both that (his) counsel's performance was deficient and that the deficient performance so prejudiced (his defense) that, but for the deficiency, there is a reasonable probability that the outcome of the trial would have been

5

different." *Reeves v. State*, 346 Ga. App. 414, 418 (3) (816 SE2d 401) (2018) (citation omitted). Black has made both showings.

Before trial, Dupree, A. W.'s mother, told trial counsel that there was animosity between A. W. and Black. In discussing whether A. W. had ever threatened to try and make Dupree leave Black, Dupree related an incident when A. W. told Dupree that "if I accuse him of touching me, you will have to leave him." Counsel planned to elicit testimony of this possible threatened accusation from Dupree during trial, but failed to do so.

At the motion for new trial hearing, he explained that when he attempted to elicit the testimony from Dupree by asking her if "anything like this has ever come up before," she answered in the negative. Counsel further testified that he then "panicked and thought – internally just decided, well, if I try to rehabilitate her, I'll be impeaching her at the same time. And I was going up against an attorney that I knew was very talented and would take that and bury me with it. So I had to let it go." Counsel also explained that since A. W. had previously testified that Black had not penetrated her vagina, he "made a very quick calculation to let that [testimony from Dupree] go because [A. W.] had already, under oath, said it didn't happen."

Counsel's explanations for his decision not to introduce the testimony arise from misapprehensions of what actually occurred at trial. Counsel's first claim that he would have had to rehabilitate and impeach Dupree at the same time in order to introduce the testimony is simply wrong. At trial, Dupree never gave testimony that contradicted her statement that A. W. had once apparently threatened that if she accused Black of touching her then Dupree would have to leave him. The testimony referred to by counsel, Dupree's negative response when asked if "anything like this [had] ever come up before," came immediately after Dupree had testified about A. W. telling her in the restaurant that Black had raped her. So that response merely indicated that A. W. had not previously told Dupree of rape or other sexual misconduct by Black. It did not require any sort of rehabilitation or impeachment of Dupree in order to elicit testimony from her about A. W.'s earlier threat of an accusation.

Likewise, counsel's rationale that A. W.'s testimony that there had been no penetration somehow eliminated the need for him to introduce other testimony that supported the defense theory of a fabricated accusation is misplaced. The trial testimony of no penetration and evidence of an earlier threatened accusation are two separate and distinct matters. "Even viewing the situation from counsel's perspective

7

at the time, we cannot say that this strategy was reasonable under the circumstances or that the decision [not to introduce testimony supporting the defense theory] was made in the exercise of reasonable professional judgment." *Ottley v. State*, 325 Ga. App. 15, 20 (2) (752 SE2d 92) (2013). Rather, we find "that decision amounted to deficient performance[, which] was prejudicial because [Black's] convictions depended entirely on [A. W.'s] credibility." *Gonzales v. State*, 345 Ga. App. 334, 337 (2) (b) (ii) (812 SE2d 638) (2018) (physical precedent). See also *State v. Crapp*, 317 Ga. App. 744, 748 (2) (732 SE2d 806) (2012) (where case was a pure credibility contest, counsel's failure to introduce available evidence that corroborates the defense supports a finding that counsel's performance was deficient).

With regard to prejudice, we must determine whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U. S. 668, 694 (III) (B) (104 SCt 2052, 80 LE2d 674) (1984). "In close cases, where the evidence presented by the state is thin, mistakes made by trial counsel take on greater significance." *Zant v. Moon*, 264 Ga. 93, 99 (2) (440 SE2d 657) (1994).

8

In this case, the state's evidence was not overwhelming, essentially consisting of A. W.'s testimony and her forensic interview. "The [alleged] victim's credibility was critical to the [s]tate's case. The mother's [testimony supporting the defense theory of fabrication] would certainly be essential to a jury's decision whether to believe the [alleged] victim's testimony, without which the [s]tate would have no case." *Gonzales*, supra at 339 (2) (a) (ii) (punctuation omitted), quoting *United States v. Watson*, 669 F2d 1374, 1383 (11th Cir. 1982). "Since the evidence against [Black] was not overwhelming, resting largely upon the . . . testimony of one witness, a reasonable probability exists that the presence of [the mother's testimony supporting the defense theory of fabrication] would have affected the result." *State v. Crapp*, supra (citations and punctuation omitted). See also *Johnson v. State*, 284 Ga. App. 147, 151-152 (2) (643 SE2d 556) (2007) (in aggravated child molestation case based solely on the testimony of the two alleged victims, a reasonable probability existed that the outcome of the case would have been different but for counsel's failure to impeach victims); *Richardson v. State*, 189 Ga. App. 113, 114 (375 SE2d 59) (1988) (where evidence against defendant rested primarily on the credibility of a single witness, there was a reasonable probability that the presence of the omitted evidence would have affected the outcome). Black has thus "carried his burden to show that

his trial counsel provided ineffective assistance[.]" *Kennebrew v. State*, 299 Ga. 864, 874 (2) (c) (792 SE2d 695) (2016). See also *Goldstein v. State*, 283 Ga. App. 1, 4-6 (3) (a) (640 SE2d 599) (2006) (trial counsel ineffective in failing to question victim's mother about her prior allegations of child molestation).

Accordingly, Black's convictions should be reversed due to ineffective assistance of trial counsel. And on remand, the state may retry him since the evidence presented was legally sufficient to sustain the convictions. See *Frazier v. State*, 339 Ga. App. 405, 413 (5) (793 SE2d 580) (2016).